**Electronically Filed
Supreme Court
SCWC-15-0000744
26-APR-2018
07:47 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

LaVONNE HARRISON, Trustee of LaVONNE'S FAMILY TRUST,
a Revocable Living Trust Agreement dated September 28, 1989,
Petitioner/Plaintiff/Counterclaim Defendant/Appellant,

vs.

CASA De EMDEKO, INCORPORATED, a Hawaii nonprofit corporation,
Respondents/Defendants/Counterclaim Plaintiffs/Appellees.

_____

SCWC-15-0000744

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000744; CIV. NO. 13-1-153K)

APRIL 26, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

LaVonne Harrison, Trustee of LaVonne's Family Trust, a

Revocable Living Trust Agreement Dated September 28, 1989

("Harrison"), an owner of two commercial apartments within a

mixed-use development project managed by Casa de Emdeko,

Incorporated, a Hawai'i nonprofit corporation, also known as Casa

De Emdeko Association of Apartment Owners ("Casa"), filed a

complaint in the Circuit Court of the Third Circuit[1] ("circuit court") on March 4, 2013, alleging she was improperly assessed for expenses that should have been charged only to residential apartment owners. Specifically, Harrison asserts she should not have been assessed for expenses related to elevators, lanai railings, drains, cable television, and pest control, because these expenses are attributable solely to residential apartments.

In the circuit court, Harrison moved for summary judgment. In its memorandum in opposition, Casa asserted that based on case law allowing entry of summary judgment for a non-moving party where there are no genuine issues of material fact, the circuit court should grant summary judgment in its favor. The circuit court treated Casa's memorandum as a cross-motion for summary judgment and granted summary judgment in Casa's favor. It concluded as a matter of law that the disputed assessments were not for limited common elements exclusive to the residential apartments, as argued by Harrison, but rather were for common elements, and were therefore expenses for which Harrison must pay her pro rata share. The circuit court further concluded Harrison was estopped from disputing the expenses because she knew or should have known that Casa had been assessing her for the disputed items for quite some time.

---

[1] The Honorable Ronald Ibarra presided.

2

In its June 20, 2017 Summary Disposition Order ("SDO"), the Intermediate Court of Appeals ("ICA") concluded the circuit court erred in granting summary judgment in favor of Casa with respect to the cable television and pest control expenses because it was unclear whether these assessments related to common elements or limited common elements. The ICA also concluded that pursuant to the Restated Declaration of Horizontal Property Regime and Hawaii Revised Statutes ("HRS") Chapter 514A (2006), the elevators, lanai railings, drains, and cable television wires are common elements, expenses for which Harrison was required to contribute. The ICA also concluded, however, that Harrison was not estopped from disputing the assessments for cable television services and pest control expenses.

Harrison raises a single question in her Application for Writ of Certiorari ("Application"):

> Did the Intermediate Court of Appeals of the State of Hawaii ("ICA") err in affirming the Circuit Court of the Third Circuit, Kona Division's ("Circuit Court") granting of Summary Judgment and Final Judgment; finding that the expenses and costs to maintain interior elevators, interior lanais and related interior improvements located solely within the residential buildings of the Casa de Emdeko Condominium Project and which are reserved exclusively for residential purposes, are "common elements" for which the commercial units of Cas[a] de Emdeko Condominium Project, located entirely in a separate building without elevators, are subject to assessments?

(Emphasis omitted.)

3

For the reasons explained below, we hold that the elevators and lanai railings of this project are limited common elements, expenses for which Harrison was not required to contribute as an owner of commercial apartments. We also hold that genuine issues of material fact precluded summary judgment as a matter of law as to whether Harrison is liable for the challenged expenses relating to the drains and cable television wires. We also hold that the circuit court erred in alternatively granting summary judgment based on estoppel by acquiescence as to all items, as genuine issues of material fact also exist as to that defense.

Therefore, we affirm the ICA's SDO and its July 31, 2017 Judgment on Appeal ("JOA") as to its rulings regarding the cable television service and pest control services expenses and otherwise vacate the SDO and JOA. The circuit court's "Order Denying Plaintiff's Motion for Summary Judgment, Filed 4/17/14 and Granting Defendant Casa de Em Deko, Incorporated's Cross Motion for Summary Judgment," filed on July 22, 2014, and the "Amended Final Judgment," filed on October 8, 2015, are vacated in their entireties, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

## II.  Background

### A.  Facts

Casa is a Hawaiʻi nonprofit corporation organized and incorporated for the purpose of managing, maintaining, protecting, and preserving 106 residential condominium apartments and three commercial apartments located in North Kona, Hawaiʻi ("the Project").  There are five buildings in the Project -- two three-story buildings, designated as Wing A and Wing B, containing only residential apartments, and three two-story buildings, designated as Building C, Building D, and Building L, each containing and constituting one commercial apartment.

The Project was first established pursuant to a Declaration of Horizontal Property Regime, with attached bylaws, dated February 19, 1969.[2]  Since 1995, the Project has been governed by a Restated Declaration of Horizontal Property Regime and By-Laws of Casa De Emdeko dated February 3, 1995 ("Declaration" or "Casa Declaration").[3]

---

[2]    The original declaration was filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaiʻi as Document No. 502817, together with Condominium Map No. 101.  It was also recorded on March 12, 1969 in the Bureau of Conveyances in Book 6439, Page 410, as amended, and/or as delineated and together with Condominium File Plan No. 128, and then duly noted on Transfer Certificate of Title No. 133,339.

[3]    The Casa Declaration was filed in the Office of the Assistant Registrar as Document No. 2253508, and also recorded on August 7, 1995 in the Bureau of Conveyances State of Hawaiʻi as Document No. 95-101951.

Since 1982, Harrison has been the owner of two commercial apartments, Apartments C and D, which are buildings C and D of the Project, and has a 6.726% ownership interest in the Project.[4] Harrison also served on Casa's Board of Directors ("Board") from at least 2001 to 2011. Her two commercial apartment unit buildings do not have elevators, cable television, or lanais, and they are physically separated from Wings A and B, the two three-story buildings that contain residential apartments.

Pursuant to Section M of the Casa Declaration, a Maintenance Reserve Fund was created into which all apartment owners must pay to cover their respective obligations "to provide for utilities, insurance, maintenance, and repair of the common elements and other expenses of administration of the project, which shall be deemed conclusively to be a common expense of the project."[5] Pursuant to Section M, the apartments

---

[4]    Harrison's Apartment C has a 2.439% common interest and Apartment D has a 4.287% common interest, for the total 6.726% common interest. In addition to Harrison's commercial apartments C and D, there is an additional commercial apartment L, with a 1.000% common interest.

[5]    Section M of the Casa Declaration provides in relevant part:

> M.    MAINTENANCE RESERVE FUND. The Board shall establish and maintain a Maintenance Reserve Fund by the assessment of any payment by all apartment owners in equal monthly installments of their respective proportionate shares of such reasonable annual amount as the Board may estimate as adequate to cover each apartment owner's obligations to provide for utilities, insurance, maintenance, and repair of the common elements and other expenses of administration of the project, which shall be deemed conclusively to be a common expense of the project. The Board may include reserves for contingencies in such assessment, and such
> (continued. . .)

are assessed dues that are deposited into Casa's "maintenance" and "reserve" accounts for the purpose of maintenance, repair, and replacement of both "common elements" and "limited common elements" of the entire Project.

**B.    Procedural History**

**1.    Circuit Court Proceedings**

**a.    Complaint**

On March 4, 2013, Harrison filed a civil complaint against Casa, seeking declaratory relief, damages, and attorneys' fees and costs.  She alleged that between 2010 and 2013, she was improperly assessed for amounts paid into the "reserve" account" for residential elevators, lanai railings and drains, which were for "limited common elements" attributable solely to residential apartments.  She also asserted that between 2009 to 2013, she was improperly assessed for amounts paid into the "maintenance" account" for cable TV, pest control and elevator maintenance costs.  She alleged these funds were actually for "limited common elements," attributed solely to residential buildings and apartments, for which she was not responsible.  Harrison alleged

---

(continued. . .)
        assessment may from time to time be increased or reduced in
        the discretion of the Board.  The proportionate interest of
        each apartment owner in said Fund cannot be withdrawn or
        separately assigned but shall be deemed to be transferred
        with such apartment even though not expressly mentioned or
        described in the conveyance thereof. . . .

7

that Casa therefore violated the Casa Declaration and applicable law.

On October 15, 2013, Casa filed its answer and a counterclaim seeking declaratory relief that (1) its assessments were lawful; and (2) Harrison had an obligation to pay the assessments.

### b.    Motions for Summary Judgment

On April 17, 2014, Harrison filed a motion for summary judgment.  Harrison and Casa repeat their various legal arguments in the circuit court, on appeal to the ICA, and on certiorari to this court.  Therefore, their arguments are discussed and analyzed in the Discussion section, Section IV below.

To summarize, in her motion, Harrison argued she was improperly assessed for costs relating to elevators, stairways, walkways, lanais, lanai railings, drains, cable television, pest control, and elevator maintenance because they related to residential building limited common elements.  She attached Casa's maintenance fee calculations from 2006 to 2013 ("maintenance fee calculations") and Casa's "Reserve Expenses Per Financial Statements 10/01/03 - 09/30/2012" to her motion.

In its June 12, 2014, memorandum in opposition, in summary, Casa argued the disputed expenses related to common elements, not limited common elements.  In addition, Casa argued that

Harrison's claims were barred by estoppel by acquiescence and consent since she had been an owner of the commercial apartments for 30 years and had served on the Board from at least 2001 to 2011, but had not objected to the disputed items until recently. Casa then argued that Flint v. MacKenzie, 53 Haw. 672, 673, 501 P.2d 357, 357-58 (1972) (per curiam), authorized the circuit court to enter summary judgment in its favor as a non-moving party, based on a lack of genuine issues of material fact entitling it to summary judgment as a matter of law.[6]

Casa attached to its memorandum a declaration from Susan Gand ("Gand"), a director of Pacifica Realty Management, Inc., which was the property manager for Casa from 2003. Gand's declaration stated in relevant part that (1) Harrison served on the Board from at least 2001 until 2011, and during that time, she "approved the association's operating budgets, maintenance fee calculation schedules, operating expenses, and reserves budgets, including all assessments and expenses for common elements and limited common elements"; (2) in 2005, Harrison did not object to a common reserve expense for elevator repairs and paid her proportionate share; (3) Harrison did not object to and voted to approve common reserve expenses regarding drains in 2005 and fiscal year 2007-2008; (4) at a Board meeting on August

---

[6]     It does not appear Harrison raised arguments opposing this procedure.

3, 2010, Harrison did not object to and voted to approve elevator modernization as a common reserve expense of $82,500; and (5) Harrison did not notify Casa in writing of any complaints or objections regarding the drains, lanai railings, pest control or cable television expenses until October 24, 2012.

On June 26, 2014, Harrison filed a reply memorandum, raising various arguments as to why the disputed expenses constituted charges for limited common elements for which she was not responsible. In response to Casa's estoppel by acquiescence argument, Harrison argued she should not be estopped for simply being an apartment owner for thirty years and having served on the Board, because she objected after she was made aware of the Association's method of characterizing expenses. Harrison attached a declaration asserting that (1) after she determined how Casa was wrongfully assessing her expenses relating to residential units, she complained to Gand and the Board on multiple occasions; (2) after she complained to Gand, Gand "agreed" with her complaints and brought it to the attention of the Board; (3) thereafter, Casa's budgets included line items for limited common elements and one of the line items was for elevator modernization; (4) in the approved Casa fiscal year 2011-2012 Budget ("2011-2012 Budget"), the elevator modernization expense of $82,500 was listed as a limited common

element under reserve expenses; (5) the approved 2011-2012 Budget also contained the statement "LCD CE = Limited Common Elements which are only appurtenant to the 106 residential units"; (6) she did not know of replacements of the drain lines in the residential apartments until after the renovations to the residential apartments in 2006 and that there are seventeen three-story stacks with drain lines appurtenant to and for the use of the residential apartments only; (7) the residential apartments each have a lanai exclusive to and appurtenant to their apartment and the lanais on the second and third floors of the residential apartments have lanai railings; and (8) the lanai railings were not an issue until their replacement on or about 2006. She also attached the 2011-2012 Budget and Casa's 2011-2012 maintenance fee calculations.

### c. Circuit Court Judgment

After a hearing on July 2, 2014, on July 22, 2014, the circuit court entered an "Order Denying Plaintiff's Motion for Summary Judgment, Filed 4/17/14 and Granting Defendant Casa De Emdeko, Incorporated's Cross-Motion for Summary Judgment" ("Order"), stating, in relevant part, the following:

> The Court concludes as a matter of law that the residential elevators, lanai railings, drains, and cable tv wires are common elements and the expenses relating to the residential elevators, lanai railings, drains, cable tv, and pest control are common expenses pursuant to Casa de Emdeko's restated declaration and bylaws, and Hawaii Revised Statutes ("HRS") Chapter 514A, except as provided in HRS §514B-22 and HRS §514B-23.

11

> Further, estoppel operates to bar the Plaintiff's claims for damages during the time she knew or should have known that the Defendant was applying funds from the reserve account and maintenance account to alleged limited common elements or limited common expenses, but delayed in bringing an action.

On August 22, 2014, the circuit court entered its final judgment. (On October 8, 2015, it entered its amended final judgment.) Harrison timely appealed to the ICA on September 19, 2014.

**2. ICA Proceedings**

On appeal to the ICA, Harrison asserted four points of error in the circuit court's Order, three of which are relevant to this certiorari proceeding: (1) the circuit court erred in concluding the disputed items were common elements and therefore constituted common expenses; (2) estoppel by acquiescence was improperly applied as there were genuine issues of material fact; (3) the circuit court erred in concluding the disputed items were assessable to both residential and commercial apartments.[7]

The ICA vacated the circuit court's decision in part. Harrison v. Casa de Emdeko, No. CAAP-15-0000744 (App. June 20, 2017) (SDO). The ICA affirmed the circuit court's conclusion

---

[7] Harrison also asserted that the circuit court had erred by failing to make findings of fact in its summary judgment ruling, an argument not repeated on certiorari and that, in any event, is devoid of merit. Rule 52(a) of the Hawai'i Rules of Civil Procedure (2000) provides in relevant part, "[f]indings of fact . . . are unnecessary on decisions of motions under Rules 12 or 56 or any other motion. . . ."

that the elevators were common elements, ruling that the elevators were not apartments or limited common elements. Casa, SDO at 4. The ICA further concluded that elevators were common elements under HRS § 514A-13(h) (2006) because they were not within the apartments themselves. Id. at 5. It also concluded that the elevators were not entries, stairways, or walkways under Section A(3) of the Casa Declaration, and were therefore not limited common elements. Id.

The ICA also ruled that lanai railings were common elements. Id. Because lanai railings were not specified as common elements or limited common elements in the Casa Declaration, the ICA looked to HRS Chapter 514A and concluded that under HRS § 514A-3(8), as lanai railings were necessary for the Project's safety, they were common elements, regardless of whether or not they were exclusive to the residential apartments. Id.

In addition, the ICA concluded that drains were common elements under Section A(2)(d) of the Casa Declaration because they were pipes that can be used for services such as water and sewer. Id. at 6. In its decision, the ICA referred to Merriam-Webster's definition of "drain" as "a means (as a pipe) by which usu. liquid matter is drained." Merriam-Webster's Collegiate Dictionary at 378 (11th ed. 2003). Casa, SDO at 6 n.3.

13

Furthermore, the ICA concluded that cable television <u>wires</u> were common elements under the Casa Declaration because the Casa Declaration provides that "[a]ll . . . wiring . . . and other central and appurtenant transmission facilities and installations over, under and across the project for services such as . . . television signal distribution" were common elements.  <u>Id.</u>

The ICA therefore rejected Harrison's claim that she was not liable for expenses relating to the elevators, lanai railings, drains, and cable television wires, reasoning that since they were common elements, the expenses related to them were common expenses.  <u>Id.</u>  Based on its conclusion that these were common elements, the ICA did not address the circuit court's alternative estoppel by acquiescence ruling regarding these expenses.  <u>Id.</u> at 7.

The ICA concluded, however, that the record was unclear as to whether cable television <u>service</u> and pest control expenses were common expenses for common elements.  It also ruled there were genuine issues of material fact as to the estoppel by acquiescence defense regarding these expenses, and vacated and remanded the circuit court's amended final judgment as to these expenses.  <u>Id.</u>

3.    **Certiorari proceedings**

On September 20, 2017, Harrison timely filed her

14

Application, presenting the following question:

> Did the Intermediate Court of Appeals of the State of
> Hawaii ("ICA") err in affirming the Circuit Court of the
> Third Circuit, Kona Division's ("Circuit Court") granting
> of Summary Judgment and Final Judgment; finding that the
> expenses and costs to maintain interior elevators, interior
> lanais and related interior improvements located solely
> within the residential buildings of the Casa de Emdeko
> Condominium Project and which are reserved exclusively for
> residential purposes, are "common elements" for which the
> commercial units of Cas[a] de Emdeko Condominium Project,
> located entirely in a separate building without elevators,
> are subject to assessments?

(Emphasis omitted.)

She argues the ICA erred in concluding the elevators, lanais, and "related interior improvements" (the drains and cable television wires) were common elements because her commercial apartments are in buildings separate from the residential apartment buildings and do not have these items. She also argues that if this court reverses the ICA's holding, the issue of estoppel is no longer moot. We accepted certiorari to address whether the circuit court and ICA erred by summarily ruling that elevators, lanai railings, drains, and cable television wires were common elements, expenses for which Harrison would be responsible. If so, we must also address whether the circuit court erred by alternatively granting summary judgment in favor of Casa based on estoppel by acquiescence.

### III. Standards of Review

#### A. Summary Judgment

An appellate court reviews a grant of summary judgment de novo, applying the same standards as a trial court:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Jou v. Dai-Tokyo Royal State Ins. Co., 116 Hawai'i 159, 164, 172 P.3d 471, 476 (2007) (citations omitted).

#### B. Interpretation of a Contract

In Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, we stated:

> When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court. This court has determined that it is fundamental that terms of contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning. Further, in construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety. If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen.

155 Hawai'i 201, 213, 166 P.3d 961, 973 (2007) (internal quotation marks, citations, and brackets omitted).

#### C. Interpretation of a Statute

Statutory interpretation is guided by the following rules:

16

> First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Panado v. Board of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 11, 332 P.3d 144, 154 (2014) (citations omitted).

## IV. Discussion

### A. Preliminary Issues

#### 1. Issues on Certiorari

The ICA vacated the circuit court's summary judgment ruling that cable television service and pest control service expenses were common expenses and that Harrison was alternatively estopped from arguing that they were not, concluding that there are genuine issues of material fact as to these issues. Casa did not seek certiorari review of these rulings. Therefore, we do not address these issues. Based on the ICA's rulings, this case must already be remanded to the circuit court with respect to the cable television service and pest control service expenses.

We must determine on certiorari whether the circuit court and ICA erred by summarily ruling that elevators, lanai railings, drains, and cable television wires were common

17

elements, for which Harrison was proportionately liable. If we conclude summary judgment was improperly granted as to any of these items, then we must also address whether the circuit court erred by alternatively granting summary judgment in favor of Casa based on estoppel by acquiescence.

   2.   **Condominium Law Generally and History of the Project**

   The starting point of determining whether part of a condominium is a common element or limited common element begins with a condominium's declaration. Generally, the declaration and bylaws of a condominium serve as a contract between the condominium owners and the association, establishing the rules governing the condominium. See Association of Apartment Owners of Maalaea Kai, Inc. v. Stillson, 108 Hawai'i 2, 9, 116 P.3d 644, 651 (2005) (citing Bradford Square Condo. Ass'n v. Miller, 258 Ga.App. 240, 245, 573 S.E.2d 405, 409 (2002) ("The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the [a]ssociation and unit owners.")).

   The Casa Declaration was first established under the provisions of the "Horizontal Property Act," 1961 Haw. Sess. Laws Act 180, which was codified as HRS Chapter 514. The legislature then repealed Chapter 514 and passed Chapter 514A, governing Condominium Property Regimes, as Act 98 of 1977. 1977 Haw. Sess. Laws Act 98, § 3 at 181. In 2004, the legislature

18

sought to "update, clarify, organize, deregulate, and provide for consistency and ease of use of the condominium property regimes law," as directed by Act 213, Session Laws of Hawai'i 2000.  2004 Haw. Sess. Laws Act 164, § 1 at 756.  The legislature recognized that Hawaii's "condominium property regimes law is unorganized, inconsistent, and obsolete in some areas, and micro-manages condominium associations.  The law is also overly regulatory, hinders development, and ignores technological changes and the present day development process." 2000 Haw. Sess. Laws Act 213 § 1 at 521.  As a result, the legislature recodified Hawaii's condominium property regimes law, amending the HRS by adding HRS Chapter 514B.  2004 Haw. Sess. Laws Act 164 § 2 at 756.

HRS Chapter 514A was initially scheduled to be repealed on July 1, 2006, but before it could be repealed, the repeal provisions themselves were repealed.  2005 Haw. Sess. Laws Act 93 § 6 at 237, 2006 Haw. Sess. Laws Act 273 § 33 at 1145. Therefore, HRS Chapter 514A, except as provided in HRS §§ 514B-22 (2006) and -23 (2006),[8] governs existing condominiums created before July 1, 2006, such as the Project.[9]

---

[8] HRS § 514A-1.5 (Supp. 2007) states in relevant part:
    (a) This chapter:
    (1) Shall not apply to condominiums created on or after July 1, 2006, or that are registered with the commission pursuant to part IV of chapter 514B; and
    (2) On and after July 1, 2006, shall apply only to:
                                          (continued. . .)

Here, the Casa Declaration specifies the Project was established pursuant to HRS Chapter 514A, as amended. Thus, if the Casa Declaration is unclear, we must turn to HRS Chapter 514A or sections of HRS Chapter 514B (2006) deemed applicable by Chapter 514A.[10]

---

(continued. . .)

> (A) Condominiums created prior to July 1, 2006, except as provided in subsection (b) and sections 514B-22 and 514B-23; and
> (B) A developer's sale of condominiums in a project for which a notice of intention was filed with the commission prior to July 1, 2006, pursuant to section 514A-31, except where the developer elects to register an existing project with the commission under part IV of chapter 514B, pursuant to section 9(b) of Act 93, Session Laws of Hawaiʻi 2005.

[9]   Before its repeal, HRS § 514B-22 provided, in relevant part, the following:

> **Applicability to preexisting condominiums.** Sections 514B-4, 514B-5, 514B-35, 514B-41(c), 514B-46, 514B-72, and part VI, and section 514B-3 to the extent definitions are necessary in construing any of those provisions, and all amendments thereto, apply to all condominiums created in this State before July 1, 2006; provided that those sections:
> (1)  Shall apply only with respect to events and circumstances occurring on or after July 1, 2006; and
> (2)  Shall not invalidate existing provisions of the declaration, bylaws, condominium map, or other constituent documents of those condominiums if to do so would invalidate the reserved rights of a developer or be an unreasonable impairment of contract.

In our analysis, we use the terms "condominium property regime" and "horizontal property regime" synonymously with "condominium," "apartment" with "unit," "apartment owner" with "unit owner," and "association of apartment owners" with "association."

[10]   See supra, ns.7 & 8.

**B.    Analyses of the Disputed Items**

**1.    Common Expenses for Which a Commercial Apartment Owner of this Project is Liable**

Section B of the Casa Declaration sets out the "common interest" percentages for the various residential and commercial apartments.  Section H then defines the "common expenses" for which residential and commercial apartment owners are liable in proportion to their respective common interests, and provides in relevant part:

> H.    COMMON EXPENSES.  All charges, costs and expenses whatsoever incurred by the Association for or in connection with the administration of the project, including without limitation the operation thereof, any maintenance, repair, replacement and restoration of the common elements and any additions and alterations thereto, any labor, services, materials, supplies and equipment therefor, any liability whatsoever for loss or damage arising out of or in connection with the common elements . . . shall constitute common expenses of the project for which all apartment owners shall be severally liable in proportion to the respective common interests. . .  The Board of Directors of the Association (herein called "Board") shall from time to time assess the common expenses against all the apartments in their respective proportionate shares. . . .

(Emphasis added.)  Thus, pursuant to the Casa Declaration, Harrison is liable for common expenses relating to common elements.  The Declaration does not, however, discuss who is responsible for expenses of limited common elements.

We therefore turn to statutory law.  HRS § 514A-3 (Supp. 2007) defines "common expenses" to include: (1) expenses of operation of the property; and (2) all sums designated common expenses by or pursuant to this chapter, the declaration or the bylaws.  HRS § 514A-15(a) (2006) then provides:

> (a) The common profits of the property shall be distributed among, and the common expenses shall be charged to, the apartment owners, including the developer, in proportion to the common interest appurtenant to their respective apartments; provided that in a mixed-use project containing apartments for both residential and commercial use, such charges and distributions may be apportioned in a fair and equitable manner as set forth in the declaration; provided further that all limited common elements costs and expenses, including but not limited to, maintenance, repair, replacement, additions and improvements shall be charged to the owner of the apartment to which the limited common element is appurtenant in an equitable manner as set forth in the declaration.

(Emphasis added.)

Therefore, pursuant to HRS § 514A-15(a), in a mixed-use project such as this, expenses related to limited common elements must be charged to the individual apartment owners to which the limited common element is appurtenant, in proportion to their common interests. Accordingly, in order to determine whether Harrison is liable for expenses related to elevators, lanai railings, drains, and cable television wires, it becomes necessary to determine whether they are common elements for which she would be liable. If they are limited common elements or are included within the residential apartments themselves, however, Harrison would not be liable for related expenses.

### 2. Apartments, Common Elements, and Limited Common Elements of the Project

Section A(1) of the Casa Declaration defines the residential and commercial "apartments" of the Project. Sections A(2) and (A)(3) then define the Project's "common elements" and "limited common elements."

22

Section A(1) of the Casa Declaration provides:

> A.    DIVISION OF PROPERTY: The project is hereby divided into the following separate freehold estates:
> 1.    Apartment.  One hundred nine (109) freehold estates are hereby designated within the perimeter walls, floors and ceilings of each of the 109 apartment units of the project contained in . . . Wing A, Wing B . . . which spaces called "apartments" are designated on said plans and described as follows:
> . . . .
> (b) . . . Each apartment contains the number of rooms and approximate floor area to these floor plans, as follows:
> (1)    TWO BEDROOM PLAN A UNITS . . ., <u>including a lanai</u> of approximately 168 sq. ft.
> (2)    ONE BEDROOM PLAN A UNITS. . ., <u>including a lanai</u> of approximately 96 sq. ft.
> (3) Plan B Units: Seventy (70) apartments, . . . being all of the remaining residential apartments of the project, . . . <u>including a lanai</u> of approximately 98 sq. ft.
> . . . .
> (4)    COMMERCIAL UNITS: Apartments C, D, and L, respectively, constitute the entire contents of Building C, Building D and Building L. . . .
> (d)    <u>The respective apartments shall not be deemed to include</u> the undecorated or unfinished surfaces of the perimeter walls or interior load-bearing walls, the floors and ceiling surrounding each apartment or any pipes, wires, conduits, or other utilities or service lines running through such apartments which are utilized for or serve more than one apartment, <u>the same being deemed common elements as hereinafter provided</u>.  Each apartment shall be deemed to include all the walls and partitions which are not load bearing within its perimeter walls, the inner decorated or finished surfaces of all walls, floors and ceilings, doors and door frames, windows and window frames and all fixtures originally installed, including stove, oven, refrigerator, washer, dryer, disposal and dishwasher.

(Emphasis added.)

The first sentence of Section A(1)(d) expressly provides that certain portions of all apartments are deemed common elements.  Section A(2) of the Casa Declaration further defines common elements as follows:

> 2.    Common Elements. <u>One freehold estate is hereby designated in all of the remaining portions of the project herein called the "common elements[,"] including specifically but not limited to:</u>
> (a) Said land in fee simple;

(b) All foundations, floor slabs, columns, girders, beams, supports, unfinished perimeter and load-bearing walls, roofs, chases, entries, stairways and walkways of said buildings;
(c) All yards, grounds, landscaping, the swimming pool and other recreational facilities, including cabanas and lockers; all refuse facilities; all roads, parking areas and driveways;
(d) All breezeways, ducts, electrical equipment, wiring, pipes and other central and appurtenant transmission facilities and installations over, under and across the project for services such as power, light, water, gas, sewer, air conditioning, telephone and radio and television signal distribution.

(Emphasis added.)

Therefore, according to the Casa Declaration, all remaining portions of the Project not included within the residential and commercial apartments are common elements.

HRS § 514A-3 defines "common elements" as follows:

"Common elements", unless otherwise provided in the declaration, means and includes:
(1) The land included in the condominium property regime, whether leased or in fee simple;
(2) The foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobbies, stairs, stairways, fire escapes, and entrances and exits of the building or buildings;
(3) The basements, flat roofs, yards, gardens, recreational facilities, parking areas, and storage spaces;
(4) The premises for the lodging or use of janitors and other persons employed for the operation of the property;
(5) Central and appurtenant installations for services such as power, light, gas, hot and cold water, heating, refrigeration, air conditioning, and incinerators;
(6) The elevators, escalators, tanks, pumps, motors, fans, compressors, ducts, and in general all apparatus and installations existing for common use;
(7) Such facilities as may be designated as common elements in the declaration; and
(8) All other parts of the property necessary or convenient to its existence, maintenance, and safety, or normally in common use.

(Emphasis added.) The underlined portion of the statute dictates that a condominium property regime's declaration determines what constitutes common elements.

24

Section A(3) of the Casa Declaration goes on to define certain common elements as limited common elements:

> 3. Limited Common Elements. <u>Certain parts of the common elements, herein called the "limited common elements[,"] are hereby designated and set aside for the exclusive use of certain apartments</u>, and such apartments shall have appurtenant thereto easements for the use of such limited common elements as follows:
> (a) One parking space or more, designated on said plans by the designation corresponding to the designation of each apartment shall be appurtenant to and for the exclusive use of such apartment.
> (b) The entries, stairways, hallways and walkways in any residential building of the project shall be appurtenant to and for the exclusive use of the apartments of such building.
> (c) The hallways and walkways on any floor of any residential building of the project shall be appurtenant to and for the exclusive use of the apartments on such floor.

(Emphasis added.)

As compared to its definition of common elements, HRS § 514A-3 defines limited common elements as follows:

> "Limited common elements" <u>means and includes those common elements designated in the declaration as reserved for the use of a certain apartment or certain apartments to the exclusion of the other apartments</u>; provided that no amendment of the declaration affecting any of the limited common elements shall be effective without the consent of the owner or owners of the apartment or apartments for the use of which such limited common elements are reserved.

(Emphasis added.)

As can be seen, in contrast with "common elements," HRS § 514A-3 does not allow a declaration to limit the definition "limited common elements" to how a declaration defines the term. HRS § 514A-3's definition of common elements includes the phrase "unless otherwise provided in the declaration." The statute therefore expressly allows a declaration to designate common elements that differ from the statutory definition. HRS § 514A-

3's definition of limited common elements, however, does not contain that exception. Rather, it expressly provides that although common elements designated as limited common elements in a declaration are <u>included</u> as limited common elements, "limited common elements" also <u>means</u> those common elements designated in a declaration "as reserved for the use of" certain apartments, whether or not they are characterized as "limited common elements" in a declaration.[11]

Therefore, although Section A(3) of the Casa Declaration seemingly restricts limited common elements to specifically enumerated items, as a matter of law, all common elements reserved for the use of certain apartments within the Project are limited common elements, whether or not they are so designated in the Casa Declaration.

Against this backdrop, we turn to address how the Project's elevators, lanai railings, drains, and cable television wires must be categorized.

### 3. The Specific Items in Dispute

#### a. Elevators

As argued by Harrison, Section A(3) of the Casa Declaration specifically defines limited common elements to include

---

[11] This definition would appear to prevent a developer from designating certain common elements for the exclusive use of certain apartments while requiring all owners to share in the expenses for something they could not use or access.

"entries, stairways, hallways and walkways in any residential building of the project . . . appurtenant to and for the exclusive use of the apartments of such building."

Although elevators are not expressly referenced, we agree with Harrison that they are an integral part of the system of "entries, stairways, hallways, and walkways" exclusive to the residential buildings. The residents use the elevators as a means of access to their individual apartments on the upper floors. For those who live on the upper floors and are unable to walk up the stairs, the elevators are the only means of "entry" into their respective apartments. In addition, Section A(3)(c) of the Casa Declaration provides that "[t]he hallways and walkways on any floor of any residential building of the project shall be appurtenant to and for the exclusive use of the apartments on such floor." Therefore, the hallways and walkways are not even available for Harrison to use, as she owns two commercial units in buildings separated from the three residential buildings.

We therefore hold that, pursuant to the Casa Declaration, the elevators are "limited common elements."

As pointed out earlier, with respect to "limited common elements," if the Casa Declaration's definition conflicted with HRS § 514A-3's definition, conflicting statutory law would control. In this case, however, our holding based on the Casa

27

Declaration is also supported by HRS Chapter 514A. Pursuant to HRS § 514A-3, all common elements reserved for the use of (a) certain apartment(s) within the Project are limited common elements, whether or not they are so designated in the Casa Declaration. Use of the elevators is limited to owners of residential apartments.

In addition, contrary to Casa's assertion, our holding is actually supported by HRS § 514A-3(6) (Supp. 2007), which provides "elevators . . . existing for common use" are common elements. As the phrase "existing for common use" modifies "elevators," only elevators which "exist for common use" are common elements under this statute. In this Project, the commercial buildings do not have elevators and the elevators are for the exclusive use of the residential apartments.

Also, contrary to Casa's position, HRS § 514A-13(h) is not relevant under the circumstances. This statute provides that "[l]obby areas, swimming pools, recreation areas, saunas, storage areas, hallways, trash chutes, laundry chutes, and other similar areas not located inside apartments intended for residential use or the conduct of a business shall constitute common elements <u>unless designated as limited common elements by the declaration</u>." (emphasis added) For the reasons stated above, this Project's elevators are limited common elements under the Casa Declaration.

Therefore, pursuant to the Casa Declaration, and as supported by statutory law, the elevators, which are exclusive to the residential buildings, are limited common elements. The circuit court and the ICA erred in ruling otherwise.

### b. Lanai Railings

Harrison also argues that the lanai railings are limited common elements. According to Sections A(1)(b)(1), (2), and (3) of the Casa Declaration quoted in Section IV(B)(2) above, "lanais" are deemed to be included within the apartments. According to Section A(1)(d) of the Declaration, apartments do not include "the undecorated or unfinished surfaces of the perimeter walls or interior load-bearing walls, [or] the floors and ceiling surrounding each apartment," which are common elements. "Lanai railings" do not appear to constitute "perimeter walls" classified as common elements under this provision.

The same provision provides that "[e]ach apartment shall be deemed to include all the walls and partitions which are not load bearing within its perimeter walls. . . ." "Lanai railings" also do not appear to fall within this provision.

Therefore, although the Declaration defines "lanais" to be included within the apartments, the Declaration is unclear whether "lanai railings" are part of the apartments or are common elements.

Casa argues that "lanai railings" are common elements under the Declaration because they are "supports" under Section A(2)(b). This provision includes "[a]ll foundations, floor slabs, columns, girders, beams, supports, unfinished perimeter and load-bearing walls, roofs, chases, entries, stairways and walkways of said buildings" within common elements.

We need not address this argument, however, because Section A(2) controls. As noted earlier, Section A(2)of the Declaration begins with the pronouncement that "all of the remaining portions of the project" not specifically included within the apartments are "common elements." As "lanai railings" are not otherwise included within the definition of apartments they are, by default, common elements under Section A(2) of the Declaration.

We then turn to Section A(3), which defines limited common elements under the Declaration. This provision does not specifically classify lanai railings as limited common elements. However, as also previously noted, pursuant to HRS § 514A-3, common elements reserved for the use of certain apartments within the Project are limited common elements, whether or not they are so designated in a declaration. Therefore, we hold that the Project's lanai railings are also limited common elements.

Casa argues that the lanai railings are common elements based on HRS § 514A-3, which provides that "[a]ll other parts of the property necessary or convenient to its . . . safety" are common elements. Lanai railings are clearly necessary to "safety" of the "property."[12]  However, HRS § 514A-3 mandates classification of these common elements as limited common elements because they are for the use of (a) certain apartment(s) to the exclusion of the other apartments.

### c.   Drains and Cable Television Wires

Harrison argues the ICA erred in characterizing the drains and cable television wires as common elements because they are located only in the residential buildings and are exclusively for residential use.[13]  To repeat, we must first examine the Casa Declaration. Section A(1)(d) of the Declaration provides that "pipes, wires, conduits, or other utilities or service lines running through such apartments which are utilized for or serve more than one apartment" are common elements. Section A(2)(d)

---

[12]    "Property" is defined by HRS § 514A-3 in relevant part to "mean[] and include[] the land, . . . the building or buildings, all improvements and all structures thereon, . . . which have been or are intended to be submitted to the regime established by this chapter."

[13]    In her question presented in her Application, Harrison refers to "related interior improvements" but not "drains" or "cable television wires." However, besides the elevators and lanais, the only remaining issues from the ICA decision are the "drains," which she argues in her Application, and "cable television wires," which the ICA held were common elements. Therefore, we infer Harrison meant "drains" and "cable television wires" when she referred to "related interior improvements."

of the Casa Declaration also provides that "[a]ll . . . wiring, pipes and other central and appurtenant transmission facilities and installations over, under and across the project for services such as . . . water, . . . sewer, . . . telephone and radio and television signal distribution" constitute common elements.

Thus, the Casa Declaration specifies that drains and cable television wires are common elements if they "are utilized for or serve more than one apartment" or they are "over, under and across the project."  Reviewed de novo, the record does not reflect whether the drains and cable television wires for which expenses were incurred are parts of specific apartments or are common elements or limited common elements.  Therefore, based on the record before us, summary judgment was inappropriately granted.

C.   Estoppel by Acquiescence

In addition to ruling that all disputed items are for common elements, the circuit court alternatively ruled Harrison liable based on application of the doctrine of estoppel by acquiescence, because she had served as a Casa Board member and had apparently approved budgets that included the disputed expenses.  Because it ruled that the elevators, lanai railings, drains, and cable television wires were common elements, the ICA also set aside the circuit court's estoppel by acquiescence

ruling only with respect to the pest control and cable television expenses for which it found genuine issues of material fact precluding summary judgment. We have now held that the elevators and lanai railings in the residential buildings are limited common elements. We have also ruled that, based on the record, genuine issues of material fact preclude summary judgment as to the drains and cable television wires.

Because the ICA upheld the circuit court's summary judgment ruling that elevators, lanai railings, drains, and cable television wires were common elements, it did not address whether the circuit court erred by alternatively applying estoppel by acquiescence to these categories of disputed items. If the circuit court was correct in alternatively ruling in favor of Casa based on this defense as to the elevators, lanai railings, drains, and cable television wires, Harrison remains responsible and no remand becomes necessary as to the items we addressed on certiorari. We must therefore also address whether the circuit court erred by alternatively granting summary judgment based on estoppel by acquiescence.

Under Hawai'i law, the statute of limitations for a breach of contract is six years. HRS § 657-1(1) (2016). Claims can be barred earlier based on an estoppel defense. In this case, Casa argues applicability of estoppel by acquiescence. "Hawai'i recognizes the theory of quasi-estoppel, which is 'a species of

equitable estoppel which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by [the party].'" Cvitanovich-Dubie v. Dubie, 123 Hawai'i 266, 276, 231 P.3d 983, 993 (App. 2010) (quoting Anderson v. Anderson, 59 Haw. 575, 589, 585 P.2d 938, 947 (1978). Furthermore, "[u]nlike equitable estoppel, an estoppel by acquiescence does not require a showing of detrimental reliance or prejudice." 31 C.J.S. Estoppel and Waiver § 175 (2018).

Estoppel by acquiescence does, however, require that the party being charged with estoppel have knowledge of relevant facts. Anderson, 59 Haw. at 589, 585 P.2d at 946. As we have stated, "Before one may be charged with knowledge it must appear that he possesses full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter." Id. (parentheses omitted).

Here, the circuit court erred in alternatively granting summary judgment in favor of Casa based on estoppel by acquiescence. Casa did not meet its burden of producing evidence that no genuine issue of material facts exists with respect to the essential elements of this defense. See Ralston v. Yim, 129 Hawai'i 46, 56-57, 292 P.3d 1276, 1286-87 (2013).

Casa produced Gand's declaration and records to indicate Harrison served on the Board to establish estoppel by acquiescence.  Casa asserts that Harrison "did not object and voted to" approve common expenses regarding the disputed items. Casa did not, however, establish that Harrison "possesse[d] full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of [her] legal rights in the matter."  The fact that Harrison was an owner of commercial apartments for thirty years and served on the Board is insufficient to establish this knowledge, which Harrison disputes.  Therefore, genuine issues of material fact also precluded summary judgment on the estoppel by acquiescence defense as to elevators, lanai railings, drains, and cable television wires.[14]

## V. Conclusion

Based on the foregoing, we hold that the elevators and lanai railings are limited common elements.  We also hold that genuine issues of material fact exist, based on this record, as to whether the drains and cable television wires are common elements.  Pursuant to the Casa Declaration and HRS § 514A-

---

[14]    The ICA also so ruled with respect to the pest control and cable television expenses.

15(a), Harrison is not responsible for expenses of limited common elements. If, on remand, it is determined that the challenged drain and cable television wire expenses addressed on certiorari as well as the pest control and cable television expenses remanded by the ICA were common expenses for common elements, then Harrison will be liable for her pro rata share of those expenses. If, on remand, expenses for drains, cable television wires, cable television services, and pest control services are determined not to be common expenses for common elements, however, it must still be determined whether Harrison is liable for those expenses as well as for the elevator and lanai railing expenses based on estoppel by acquiescence.

Accordingly, we affirm the ICA's SDO and JOA as to its rulings regarding the cable television service and pest control services expenses and otherwise vacate the SDO and JOA. We also vacate the circuit court's "Order Denying Plaintiff's Motion for Summary Judgment, Filed 4/17/14 and Granting Defendant Casa de Emdeko, Incorporated's Cross Motion for Summary Judgment," filed on July 22, 2014, and the "Amended Final Judgment," filed on October 8, 2015, in their entireties, and remand this case to

36

the circuit court for further proceedings consistent with this opinion.

Francis L. Jung                    /s/ Mark E. Recktenwald
for petitioner

                                   /s/ Paula A. Nakayama
Wesley H. H. Ching
for respondent                     /s/ Sabrina S. McKenna

                                   /s/ Richard W. Pollack

                                   /s/ Michael D. Wilson