**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000436**
**27-FEB-2026**
**08:08 AM**
**Dkt. 89 MO**

NO. CAAP-23-0000436

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


SHERRI R. FROST and LARRY FROST, Plaintiffs-Appellants,
v.
ASSOCIATION OF APARTMENT OWNERS OF PUʻU POʻA;
HAWAIIANA MANAGEMENT COMPANY; ANN ROSS, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; DOE LIMITED LIABILITY
COMPANIES 1-10; DOE DOMESTIC NONPROFIT
CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CCV-20-0000058)


**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Sherri R. Frost and Larry Frost appeal from two Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b)-certified judgments for the Association of Apartment Owners of Puʻu Poʻa and Hawaiiana Management Company (together, **AOAO**) entered by the Circuit Court of the Fifth Circuit.[1] The Frosts challenge (1) the April 12, 2023 order granting partial summary judgment for the AOAO on Count I of the Frosts' amended complaint, and (2) the June 21, 2023 order granting partial summary judgment for the AOAO on Counts II and III of the amended complaint. We affirm.

---

[1] The Honorable Kathleen N.A. Watanabe presided.

BACKGROUND

Puʻu PōʻĀ is a condominium on Kauaʻi. It consists of three four-story buildings and a manager's residence. The multi-story buildings are cantilevered; the post-tensioned concrete slabs forming the roofs of the ground-, second-, and third-floor apartments also form the atria and lānai of the apartments above.

Uncontroverted evidence in the record shows the roof/lānai slabs were specified to have a waterproofing membrane "to protect the general structural integrity of the slab, to protect the exposed top surface of the lanai slab from the elements that can result in corrosion of the reinforcing steel in the lanai slabs and to serve as a roof membrane for the unit below." Since 2012, there have been "leaks into apartment living spaces from the lanais and atria above those apartments. The leakage from lanai slabs into apartments below the slabs has occurred on all lower floors in the project, including leakage into ground floor apartments."

The Frosts own a ground-floor apartment in Puʻu PōʻĀ. They sued the AOAO and others. Their amended complaint alleged that the AOAO "has obtained bids to waterproof the open atriums and lanais," but only "on the 2nd, 3rd and 4th floors[.]" Although "the ground-floor Apartments . . . are excluded" from the waterproofing,[2] the Frosts alleged that the AOAO "will be assessing all 56 owners equally as a Common Element Expense . . . which pertains only to said 42 Apartments." They also alleged that the AOAO's bylaws were improperly amended, and the AOAO's board spent AOAO funds without authority.

Count I of the amended complaint sought declaratory and injunctive relief about the roof/lānai slab project. Counts II and III alleged breaches of contract and fiduciary duty, respectively. Count IV (which is not a subject of this appeal)

---

[2] The ground-floor units have narrow lānai that appear to be completely covered by the roof/lānai slab of the unit above. **[JEFS 378 @ 39]**

alleged retaliation against the Frosts in violation of Hawaii Revised Statutes (**HRS**) § 514B-191.

The AOAO moved for partial summary judgment on Count I. The motion was granted. The AOAO then moved for partial summary judgment on Counts II and III. That motion was also granted. The Frosts appealed. After two temporary remands, the Circuit Court entered the HRCP Rule 54(b)-certified amended judgments from which this appeal is taken.

The Frosts contend the Circuit Court erred by granting the AOAO's motions for partial summary judgment.

## STANDARDS OF REVIEW

### Summary Judgment

We review a grant of summary judgment *de novo*. Ralston v. Yim, 129 Hawaiʻi 46, 55, 292 P.3d 1276, 1285 (2013). Summary judgment is appropriate if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. A fact is material if proof of that fact would establish or refute one of the essential elements of a party's cause of action or defense. Id. at 55–56, 292 P.3d at 1285–86. The evidence must be viewed in the light most favorable to the non-moving party. Id. at 56, 292 P.3d at 1286.

When (as here) the summary judgment movant does not bear the burden of proof at trial, it has the burden to show (1) there is no genuine issue of material fact on the essential elements of the claim or defense addressed by the motion, and (2) the uncontroverted facts entitle it to judgment as a matter of law. Ralston, 129 Hawaiʻi at 56, 292 P.3d at 1286. Once the movant satisfies its burden, the non-moving party must "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. at 56-57, 292 P.3d at 1286-87.

We "may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not

rely on it." Jardine v. State, 155 Hawaiʻi 60, 68, 556 P.3d 406, 414 (2024).

### Condominium Documents

A condominium's declaration and bylaws "serve as a contract between the condominium owners and the association, establishing the rules governing the condominium." Harrison v. Casa De Emdeko, Inc., 142 Hawaiʻi 218, 226, 418 P.3d 559, 567 (2018). The construction and legal effect to be given a contract is a question of law freely reviewable on appeal. Id. at 225, 418 P.3d at 566.

### DISCUSSION

### Count I

Count I sought a declaration that the waterproofing cost be specially assessed against the upper-floor units, and an injunction against the AOAO paying for it with AOAO funds. The amended judgment on Count I declared: "the upper floor lanais act as roofs for the living spaces below and application of the Duradek waterproof membrane is required to maintain the structural integrity of the common element concrete lanai slabs and is therefore a proper use of AOAO funds to maintain a common element of the project."

The AOAO attempted to prove that the roof/lānai slabs are common elements by offering a letter from structural engineer Glenn **Miyasato** to the AOAO's counsel, dated July 8, 2021. Miyasato's letter stated he had reviewed "the building drawings for Puʻu Poʻa Condominiums[.]" It stated:

> Sheet SKS-6 of the drawings show that the building lanais at the second, third and fourth floor units are constructed of suspended concrete slabs reinforced with post-tensioned tendons and mild reinforcing steel that span to concrete walls at each end of the slab. Therefore, the lanai floor slabs serve as structural elements that support vertical floor loads placed on the lanai and distribute lateral loads through diaphragm action to the supporting walls.

4

The Frosts argue, as they did below, that Miyasato's letter was not properly authenticated. Bradford F.K. Bliss, the AOAO's attorney to whom the letter was addressed, submitted a declaration authenticating the letter. The letter was properly authenticated.

The Frosts argue that "Miyasato himself did not submit any declaration or affidavit authenticating his supposed expert opinion." We construe the argument as an objection to hearsay under Rule 802, Hawaii Rules of Evidence (**HRE**), Chapter 626, Hawaii Revised Statutes (2016).[3] The Circuit Court didn't rule on the objection, and appears to have considered the letter in ruling on the motion for partial summary judgment.

Miyasato's letter itself was inadmissible hearsay because it was offered to prove the truth of the matters asserted by Miyasato. However, the record also contains Miyasato's declaration. Miyasato stated, under penalty of law:

> 2. . . . The opinions expressed in my July 8, 2021 letter have been rendered to a reasonable degree of engineering probability.[4]
>
> 3. In the last paragraph on page 1 of my July 8, 2021 letter I reference certain details in the original drawings for the Pu'u Po'a project in which the requirement of a waterproofing membrane on the lanais is specified.
>
> 4. . . . The exhibits attached hereto are enlarged excerpts from the drawing sheets referenced in and enclosed with my letter. These plan details confirm that a waterproofing membrane for the lanai slabs was specified in the original plans for the Pu'u Po'a project. For the reasons stated in my July 8 letter, waterproofing is required to protect the general structural integrity of the slab, ***to protect the exposed top surface of the lanai slab***

---

[3] HRE Rule 802 provides:

Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute.

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801.

[4] The Frosts did not challenge Miyasato's qualifications to provide opinion testimony under HRE Rule 702.

> from the elements that can result in corrosion of the reinforcing steel in the lanai slabs **and** to serve as **a roof membrane for the unit below**.

(Emphasis added.)

The opinions expressed in Miyasato's declaration were admissible.

The Frosts submitted no evidence to controvert Miyasato's testimony.

The AOAO also submitted the Puʻu PōʻĀ *Declaration of Horizontal Property Regime*. It stated:

> **C.** **Common Elements**. One freehold estate is hereby designated in all of the remaining portions of the property, herein called the "common elements", including specifically but not limited to:
>
> . . . .
>
> (2) **All structural components**, such as foundations, beams, supports, main walls, **roofs**, halls, corridors, lobbies, stairs, stairways and fire escapes, entrances, exits, **floor slabs**, unfinished perimeter, party, and load-bearing walls, awnings and walkways of said buildings[.]

(Bold italics added.)

The AOAO was considering the Duradek™ Ultra PVC Sheet Membrane waterproofing system. According to the Frosts' evidence, Duradek is "an outdoor vinyl flooring system that provides an attractive, finished walking surface and roof-grade waterproofing in a single-ply, single product solution" that is "easily integrated into the building envelope to assist in managing water away from the structure, thus protecting the building and extending its life." It "never requires recoating to keep doing its waterproofing job. Just a one-time installation and Duradek stays waterproof through its lifecycle."

Earlier in the litigation, the Frosts conceded "that the unfinished lanai concrete slabs are common elements; however, any finish applied _to_ the lanai slabs or _above_ the lanai slabs — *including explicitly the finished surfaces at issue* — is specifically defined as part of the apartment per the Project's

6

Documents and HRS §514B [sic] for which use of common reserve funds is undeniably NOT proper."

That Duradek provides a "finished walking surface" over the roof/lānai slabs is not material because it is uncontroverted that Duradek, applied to the roof/lānai slabs, will protect the lower apartments (including the Frosts') from water intrusion.

The Frosts argue that Duradek becomes part of the lānai, which is part of the apartment, which each owner is responsible to maintain. The Declaration provides:

> B. Description of the Apartments: Fifty-six (56) separate condominium apartments are designated **in the spaces within** the perimeter and party walls, floors and ceilings of each of the fifty-six (56) apartment units of the buildings, distributed among the three apartment buildings on the land as described above, which spaces together with **appurtenant lanai air spaces** are referred to herein as "apartments", and are designated on said condominium map and described as follows:
>
> . . . .
>
> (4) Other Data Identifying and Defining the Apartments: The respective apartments **shall not be deemed to include** the undecorated or unfinished surfaces of the perimeter or party walls or interior load-bearing walls, awnings (if any), **the floor and ceiling surrounding each apartment** or any pipes, wires, conduits or other utility or service lines which are utilized for or serve more than one apartment, **the same being common elements** as hereinafter provided. **Each apartment shall be deemed to include** all the walls and partitions which are not load-bearing within its perimeter or party walls, the **inner** decorated or **finished surfaces** of all walls, floors, and ceilings, doors and door frames, windows and window frames, **lanai and atrium air space**, planter areas, if any, adjacent to lanais and atriums, and all fixtures originally installed in the apartment.

(Emphasis added.)

As a matter of law, the roof/lānai slab is not part of an Apartment. Nor is the slab's surface. Only the outside air space above the slab surface is part of an Apartment. On this record, the Circuit Court did not err by declaring that the roof/lānai slabs are common elements, and that application of the Duradek waterproof membrane was required to maintain the structural integrity of the slabs.

7

The Declaration gives the AOAO's **Board** of Directors the duty and power to maintain and repair the common elements. Article V of the Bylaws provides:

> SECTION 2.  Maintenance and Repair of Common Elements. All maintenance, repairs and replacements of the common elements, whether located inside or outside of the apartment, shall be made only by or at the direction of the Board and be charged to all the Owners as a common expense[.]

The Frosts argue the waterproofing cost should be assessed against the upper-floor apartments only, because Bylaws Article V, Section 3(c) requires that "[e]ach Owner be responsible for the care and maintenance of any lanais which are included in his apartment."

The only portion of the lānai included in an Apartment is the "lanai and atrium air space."  Declaration Part 3.B(4). The roof/lānai slabs — which the uncontroverted evidence shows were specified to have a waterproof membrane "to serve as a roof membrane for the unit below" — are not part of the Apartments. The lānai surfaces are not "*inner* . . . finished surfaces of . . . floors[.]"  Declaration Part 3.B(4) (emphasis added).

It is uncontroverted that Duradek is "roof-grade waterproofing."  It can also serve as a finished walking surface, but that is an incidental benefit of the product.  It doesn't mean a second-floor apartment must bear the entire cost of the Duradek that protects a ground-floor apartment from water intrusion, and protects the structural integrity of the condominium's multi-story buildings.

The Frosts argue that res judicata (claim preclusion) and collateral estoppel (issue preclusion) preclude the AOAO from claiming that the atria and lānai are part of the Apartments. They rely on Ucko v. Robbins, No. 26485, 2006 WL 1331542 (Haw. May 17, 2006) (SDO).  The Ucko plaintiffs sued the AOAO and others over "the installation of atrium enclosures in certain units[.]"  2006 WL 1331542, at *1.  The supreme court held that

"[t]he atrium enclosures *enclose* atrium *air space*, and thus constitute an alteration or addition within an apartment."  <u>Id.</u>, 2006 WL 1331542, at *2 (emphasis added, citing Declaration Part 3.B(4)).  Thus, "the atrium enclosures were not 'additions or structural alterations to or exterior changes of any *common elements* of the property[.]'"  <u>Id.</u>  Here, the lānai are not enclosed; the lānai surface is thus not an "inner" finished floor surface.  <u>Ucko</u> does not stand for the proposition that a lānai — or its surface — is part of an Apartment.

The Frosts argue the Circuit Court erred by considering opinion letters from James Engler and John Morris.  The AOAO did not submit a declaration or affidavit from either witness.  Their letters, authenticated by the AOAO's counsel, were inadmissible hearsay if offered to prove the truth of the opinions expressed. HRE Rule 802.  We disregard that evidence in our *de novo* review. Nevertheless, the uncontroverted admissible evidence shows that application of Duradek is necessary to maintain the structural integrity of the common element roof/lānai slabs, and to protect the apartments below from water intrusion.  As a matter of law, it was an appropriate common expense under Bylaws Article V, Section 2.

The Circuit Court did not err by declaring that "the upper floor lanais act as roofs for the living spaces below and application of the Duradek waterproof membrane is required to maintain the structural integrity of the common element concrete lanai slabs and is therefore a proper use of AOAO funds to maintain a common element of the project."

### Counts II and III

Counts II and III alleged breaches of contract and fiduciary duty, respectively.  The Frosts offer a single sentence to argue for vacation of the summary judgment on Counts II and III:  "Since teh [sic] June motion [on Counts II and III] was dependent upon the April motion [on Count I], it too should be

9

reversed."  We are affirming the summary judgment on Count I.  We also affirm the summary judgment on Counts II and III.

<u>**CONCLUSION**</u>

The November 5, 2025 *Amended Final Judgment Dismissing Count I of the First Amended Complaint with Prejudice* and the November 5, 2025 *Amended Final Judgment Dismissing All Claims of Unauthorized Spending With Prejudice* are affirmed.

DATED: Honolulu, Hawaiʻi, February 27, 2026.

On the briefs:

Terrance M. Revere,
Andria R. Schumann,
for Plaintiffs-Appellants
Sherri R. Frost and
Larry Frost.

Bradford F.K. Bliss,
George W. Brandt,
for Defendants-Appellees
Association of Apartment
Owners of Puʻu Poʻa,
Hawaiiana Management Company,
and Ann Ross.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge