**Electronically Filed
Supreme Court
SCAP-23-0000460
27-SEP-2024
07:54 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ALVIN F. JARDINE, III,
Petitioner-Appellant,

vs.

STATE OF HAWAI'I,
Respondent-Appellee.

SCAP-23-0000460

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-23-0000460; CASE NO. 2SP161000056)

SEPTEMBER 27, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
WITH DEVENS, J., CONCURRING IN PART AND DISSENTING IN PART

OPINION OF THE COURT BY RECKTENWALD, C.J.

### I.    INTRODUCTION

This case concerns Hawai'i's wrongful conviction

compensation statute, Hawai'i Revised Statutes (HRS)

chapter 661B (2016).  In 2016, the legislature enacted HRS

chapter 661B, which provides compensation to individuals who

have been wrongfully convicted.  To present an actionable claim,

HRS § 661B-1(b)(1) (2016) requires that a petitioner allege "[t]he judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states[.]"

In 1991, Alvin F. Jardine, III was convicted of ten counts related to an alleged home invasion and rape, and was sentenced to thirty-five years in prison. In 2011, he filed a petition to vacate his conviction under Hawai'i Rules of Penal Procedure (HRPP) Rule 40 based on newly discovered DNA evidence. The criminal circuit court (HRPP Rule 40 court) vacated his conviction and ordered a new trial, but the Maui Prosecuting Attorney filed a motion to dismiss the case with prejudice, which the court granted. In 2016, Jardine filed a civil petition for compensation under HRS chapter 661B. The civil circuit court (HRS chapter 661B court) held that Jardine failed to allege an actionable claim because the order vacating his conviction did not state that he was "actually innocent." Jardine appealed and applied for transfer of the case to this court, which we granted.

We hold that HRS § 661B-1's requirement that an order vacating or reversing a petitioner's conviction "so state[]" that they were "actually innocent" does not require those two exact words to be present. It does, however, require that such an order state a finding that supports a petitioner's "actual

2

innocence" – that is, the order should support the conclusion that the petitioner did not commit the crime.  The order vacating Jardine's conviction meets this standard, and he therefore has presented an actionable claim for relief under HRS chapter 661B.

Because there are still issues of material fact as to Jardine's "actual innocence," the circuit court erred in granting the State summary judgment as to the merits of his compensation claim.  Therefore, the case is remanded for the HRS chapter 661B court to hold a trial on the issue of whether Jardine is "actually innocent," and entitled to compensation under the statute.

Accordingly, we vacate the HRS chapter 661B court's grant of summary judgment to the State and remand for further proceedings.

## II.  BACKGROUND

### A.  Factual Background

The HRPP Rule 40 court, which vacated Jardine's conviction, described the alleged criminal incident in 1990 as follows.  One night in December 1990, a stranger entered Complainant's home on Maui.  Complainant saw a "man, whom the complainant described as bare-chested and sweaty" inside of her home, and observed him remove his shorts. The man then "forced the complainant to the floor . . . then lifted her off the floor

3

with his arm around her neck and held a knife to the side of her neck." The man "continued to hold the complainant at knifepoint, on his lap, as he sat naked on a round 'papa-san' chair." That chair was "covered by a green and white checked tablecloth." The man then sexually assaulted Complainant. Later, police collected the green and white checked tablecloth as evidence.

Jardine was charged with the alleged home invasion and rape, and the case went to trial. The first two trials were declared mistrials because the juries were unable to reach a verdict. A third jury convicted Jardine of ten felony counts, including four counts of Sexual Assault in the First Degree. He was sentenced to imprisonment for thirty-five years.

In 2008, Jardine filed a petition for post-conviction DNA testing under HRS § 844D-121, which was granted. Based on the results of that testing, in 2010 Jardine filed an HRPP Rule 40 petition for post-conviction relief, seeking a new trial based on newly discovered DNA evidence.[1] His petition alleged that there were several witness identification issues and new, exculpatory DNA evidence, that required a new trial.

---

[1] The Honorable Joel E. August presided.

In January 2011, the court held a hearing on the results of the DNA testing, with Jardine's counsel and Maui County prosecutors present.

As explained by the HRPP Rule 40 court:

> 8. The only remaining piece of tangible evidence from the crime scene is the green and white checked tablecloth recovered from the crime scene by the police and tested by Orchid Cellmark, a certified DNA testing laboratory located in Farmers Branch, Texas.
>
> 9. On January 10, 2011, the Petitioner and the State stipulated to the admission into evidence of: (1) The expert "Report of Laboratory Examination dated September 28, 2009, Supplemental-FR09-003-A" a deposition recorded on a DVD and the deposition transcript of Petitioner's expert, Ms. Huma Nasir of Orchid Cellmark; (2) all deposition exhibits marked in Ms. Nasir's deposition; (3) the chain of custody of all of the evidentiary materials and Petitioner's DNA sample utilized by Ms. Nasir in her DNA analysis and in rendering her opinion.
>
> 10. The results of the DNA analysis and testing by Orchid Cellmark conclusively excluded Mr. Jardine as the contributor of the DNA found in the bodily fluid that was located on the green and white checked tablecloth taken by the police as evidence from the crime scene.

(Emphasis added.)

The HRPP Rule 40 court granted Jardine's petition, vacated his conviction, and ordered a new trial. It based its decision on the test outlined in State v. McNulty, 60 Haw. 259, 267–68, 588 P.2d 438, 445 (1978), in which this court held:

> A motion for new trial based on newly discovered evidence will be granted only if all of the following requirements have been satisfied: (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial.

5

Overruled on other grounds by Raines v. State, 79 Hawai'i 219, 900 P.2d 1286 (1995) (citation omitted).

The HRPP Rule 40 court made a number of conclusions of law, including:

> 3. Newly discovered DNA evidence, obtained pursuant to this Court's October 14, 2008 Order Compelling Post-Conviction DNA Testing of Evidence, conclusively excludes Mr. Jardine as the contributor of the male DNA found on evidence (the tablecloth) recovered from the crime scene. This evidence is sufficient to merit a new trial . . . .
>
> . . . .
>
> 7. The fourth McNulty/Caraballo element, that the evidence be of such a nature as would reasonably probably change the result of a later trial, is also satisfied as the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict.

(Emphasis added.)[2]

In July 2011, the Maui County Prosecutor filed a motion to dismiss Jardine's criminal case with prejudice.[3] The motion did not describe the reason the Maui County Prosecutor sought dismissal. The HRPP Rule 40 court granted the motion by signing the State's prepared order and provided no further reasoning.

_____

[2] The Cellmark DNA report is in the record, and states that in testing two samples, there was evidence of "a mixture consistent with at least two individuals, including at least one unknown male." For both of those samples, the report stated that "Alvin Jardine is excluded as a possible donor of the DNA detected on this sample."

[3] Jardine asserts the motion was filed ex parte. The motion was entitled "Motion to Dismiss With Prejudice; Order." The record in the instant case does not include a certificate of service for the motion.

**B.    Procedural Background**

In 2016, the legislature enacted House Bill 1046, which was signed into law as Act 156 and codified as HRS chapter 661B, Hawai'i's statute for redress for wrongful conviction and imprisonment.  HRS § 661B-1, provides the pleading requirements that petitioners must allege to present an actionable claim under the statute:

> (a) Any person convicted in a court of the State and imprisoned for one or more crimes of which the person was actually innocent may file a petition for relief pursuant to this chapter for an award of damages against the State; provided that the requirements of subsection (b) are met.
>
> (b) To present an actionable claim against the State for wrongful conviction and imprisonment, the petitioner shall allege that the petitioner was convicted of one or more crimes under the laws of the State, was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence and either that:
>
> > (1) The judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states; or
> >
> > (2) The petitioner was pardoned because the petitioner was actually innocent of the crimes for which the petitioner was convicted and the pardon so states.

(Emphases added.)

HRS § 661B-2 (2016) describes the presentation of a claim:

> (a) A petition for relief filed pursuant to this chapter shall be filed in the circuit court of the circuit in which the petitioner lives, or if the petitioner lives outside the State, in the circuit court of the first circuit.  The petitioner shall serve the petition upon the attorney general, and if the prosecuting authority was other than the attorney general, upon the prosecuting authority.  The petition shall set forth the facts and authority that support the petitioner's claim.

7

(b) No later than sixty days after service, the attorney general shall file with the court an answer that shall either admit that the petitioner is entitled to compensation or deny the petitioner's claim.

If the attorney general admits that the petitioner is entitled to compensation, the court shall conduct a trial to determine the amount of compensation; provided that if the attorney general and the petitioner agree on the amount of the compensation, the court may issue a final judgment awarding the petitioner the amount agreed upon or, in its discretion, conduct a trial to determine the amount to award the petitioner.

If the attorney general denies that the petitioner is entitled to compensation, then the court shall conduct a trial to determine if the petitioner is entitled to compensation and the amount, if any.

. . . .

(d) Any action against the State under this chapter shall be tried by the court without a jury; provided that the court, with the consent of all the parties, may order a trial with a jury whose verdict shall have the same effect as if trial by jury had been a matter of right.

(Emphases added.)

HRS § 661B-3 (2016) provides the standards and procedures for a judgment and award under the statute. Importantly, it sets forth the burden of proof and the elements that the petitioner must establish at trial:

(a) The petitioner shall have the burden to prove by a preponderance of the evidence:

(1) That the petitioner is eligible to seek compensation in accordance with the requirements set forth in section 661B-1;

(2) That the petitioner was convicted in a court of the State and subsequently imprisoned for one or more crimes, but the petitioner was actually innocent of the crimes at issue; and

8

> (3) That the petitioner served time in prison for the crime or crimes, including time served prior to conviction, if any.

(Emphases added.)

### 1. HRS chapter 661B proceedings

In 2016, Jardine filed a civil HRS chapter 661B petition in the Circuit Court of the Second Circuit seeking relief for wrongful conviction and imprisonment. Jardine filed a motion for summary judgment, contending that he was entitled to a court order stating:

> (1) Petitioner has standing to bring his claim;
>
> (2) Petitioner is entitled to compensation for redress for wrongful conviction and imprisonment under Chapter 661B of the Hawaii Revised Statutes ("HRS") based upon Petitioner's twenty (20) years of incarceration for a crime for which he is actually innocent;
>
> (3) Petitioner shall be awarded compensation as provided for by HRS § 661B-3 as a result of Petitioner's wrongful conviction and imprisonment; and
>
> (4) A final judgment shall enter.

He argued that he met all of the standing requirements of HRS § 661B-1 and elements of the claim under HRS § 661B-3(a), and was therefore entitled to compensation under the statute. Jardine further contended that the HRPP Rule 40 court's vacatur of his conviction "specifically [found that] the exculpatory DNA evidence made it probable a jury would not convict Mr. Jardine at trial," and therefore satisfied HRS § 661B-1(b)(1)'s requirement of "actual innocence." Jardine also argued that HRS chapter 661B's purpose was "to address the harms due as the

9

result of an exoneration for a crime due to innocence." Thus, denying him compensation because he was not found "actually" innocent <u>before</u> the statute's enactment would conflict with the statute's express purpose.

The State filed a motion for judgment on the pleadings or, in the alternative, summary judgment. It contended that the legislature chose to include the phrase "and the court decision so states" to indicate that the statute requires that a petitioner prove this element specifically. Here, because the HRPP Rule 40 court's order vacating Jardine's conviction did not explicitly state that he was "actually innocent," the State argued Jardine did not present an actionable claim under HRS § 661B-1.

The HRS chapter 661B court granted the State's motion for summary judgment.[4] It made the following findings of fact and conclusions of law:

> 4. On September 20, 2010, Petitioner filed his Fourth Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner Alvin F. Jardine, from Custody, and moved for a new trial based on newly discovered DNA evidence.

> 5. On February 2, 2011, Petitioner's fourth petition was granted. Petitioner's convictions in Criminal No. 91-0004(1) were vacated, and Petitioner was granted a new trial.

---

[4]    The Honorable Kelsey T. Kawano presided.

6.  In granting a new trial, the court found, among other things, that "the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict."

7.  However, the court did not state, or otherwise find, that Petitioner was actually innocent of the crimes for which he had been convicted in Criminal No. 91-0004(1).

8.  There was no new trial after Petitioner's convictions were vacated.

9.  On July 21, 2011 , the Maui Prosecuting Attorney filed a Motion to Dismiss With Prejudice, for no stated reason.

B.  FINDINGS AND DECISION OF COURT IN CRIMINAL CASE

13.  ln the Vacatur Order, the court in the underlying criminal case found: "The results of the DNA analysis and testing by Orchid Cellmark conclusively excluded Mr. Jardine as the contributor of the DNA found in the bodily fluid that was located on the green and white checked tablecloth taken by the police as evidence from the crime scene."

14.  The tablecloth was placed as a throw on the "papa-san" chair in the living room of victim, [Complainant]'s home.

15.  The perpetrator of sexual assaults against [Complainant] sat naked on the round "papa-san" chair and forced [Complainant] to sit on his lap as she placed a telephone call to her neighbor, to let her neighbor know that she was alright.

16.  The perpetrator did not sexually assault [Complainant] on the "papa-san" chair.

17.  [Complainant] was sexually assaulted by the perpetrator elsewhere in the house, on the living room floor, and on the bed in the smaller bedroom of the house.

18.  No semen was detected on the tablecloth covering the "papa-san" chair.

19.  Of 31 items provided to Orchid Cellmark for possible examination, only the green and white checked tablecloth was tested.

20.  The green and white checked tablecloth was the only remaining piece of tangible evidence from the crime scene recovered by the police.

21. There was no evidence presented on how long, prior to the date of the sexual assaults, the tablecloth had been placed on the "papasan" chair, or anywhere else in the home.

22. There was no evidence of the tablecloth being recently laundered.

23. There were four stains on the tablecloth that were identified and tested by Orchid Cellmark.

24. Petitioner was excluded as the donor of two yellow stains on the tablecloth.

25. A third stain was a blood stain "consistent with originating from an unknown female," i.e., not [Complainant].

26. A fourth stain was another blood stain for which "[m]ale DNA was not detected."

27. There was no evidence that either [Complainant] or the perpetrator of the sexual assaults were bleeding, or had any open wounds, at the time the perpetrator was seated on the "papasan" chair, covered by the tablecloth, with [Complainant] on his lap.

28. Based on the foregoing evidence, there is a genuine issue of material fact as to whether the perpetrator and victim, [Complainant], were the only possible donors of the bodily fluids detected on the tablecloth.

29. Based on the foregoing evidence, Petitioner was "conclusively excluded ... as the contributor of the DNA found in the bodily fluid that was located on the green and white checked tablecloth taken by the police as evidence from the crime scene."

30. However, Petitioner was not "conclusively excluded" as the perpetrator of the sexual assaults against [Complainant].

31. Based on the foregoing, there is a genuine issue of material fact as to whether Petitioner is actually innocent of the crimes for which he has been convicted.

. . . .

II. CONCLUSIONS OF LAW

A. ELIGIBILITY TO FILE PETITION

1. The prerequisites for an actionable claim, which are required for eligibility to file a petition for

compensation under HRS Chapter 661B, are set out in HRS §661B-1(b)(1).

2. Under HRS § 661B-1(b)(1), Petitioner's convictions must have been vacated because he was actually innocent, and the order vacating his convictions must "so state."

3. The plain language of HRS § 661B-1(b)(1), and its legislative history, compel this reading of the statute -- requiring an explicit finding of actual innocence in the criminal court's order vacating his convictions.

4. The findings in the Vacatur Order that "the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict" fail to meet the prerequisites for an actionable claim in HRS § 661B-1(b)(1).

5. The findings in the Vacatur Order were that: The new DNA evidence is of a "potentially exculpatory nature," i.e., the new DNA evidence was possibly exculpatory; and that the new DNA evidence had a "reasonable probability of changing the jury's verdict," which is not equivalent to a finding of actual innocence.

6. Consequently, Petitioner fails to allege an actionable claim under HRS § 661B-1(b)(1), and thus, is not eligible to file a petition for compensation under HRS Chapter 661B.

(Emphases added.)

The court went on to consider the merits of Jardine's claim for compensation, concluding:

7. Moreover, even assuming an actionable claim, the evidence presented by Petitioner, taken in the light most favorable to the State, fails to show that there is no genuine issue of material fact as to Petitioner's actual innocence of the crimes for which he had been convicted.

8. Therefore, Petitioner failed to establish that he is entitled to compensation as a matter of law, under HRS § 661B-3.

The court subsequently entered judgment in favor of the State and against Jardine.

13

### 2.     Appellate proceedings

Jardine appealed to the ICA and then applied for transfer to this court, which we granted.  Jardine asks this court to reverse the HRS chapter 661B court's grant of summary judgment to the State and grant his motion for summary judgment.

The HRS chapter 661B court held that an explicit finding of actual innocence in the order vacating Jardine's conviction was required for him to present an actionable claim under HRS § 661B-1.  Jardine argues that this conclusion is inconsistent with the plain language of HRS chapter 661B and will lead to absurd results.  He argues that HRS chapter 661B only requires "evidence of innocence," and "not an express finding of 'actual innocence.'"

Further, Jardine argues that before HRS chapter 661B's enactment in 2016, "the term 'actual innocence' did not exist" in Hawai'i's jurisprudence.  Thus, he could not have requested a finding of actual innocence when his conviction was vacated in 2011.  Because the legislature intended HRS chapter 661B to compensate wrongfully convicted individuals, including those convicted before its enactment, interpreting the statute to require such "magic words" or an express finding of actual innocence would contradict its purpose.

Jardine argues that other jurisdictions have "consistently determined a finding of innocence in a vacatur

order simply means the conviction was vacated due to evidence of innocence, and not based upon some technicality or procedural issue." (Emphases omitted.) He contends that the "true issue" is whether his vacatur was based "on grounds resting upon facts and circumstances probative of the proposition that [he] did not commit the crime," quoting Coyle v. State, 492 P.3d 366, 373-74 (Colo. App. 2021) (citations omitted). In his case, Jardine argues that the vacatur order of his conviction focused on "the identity of the Rapist, and new DNA evidence that conclusively excluded Mr. Jardine as a contributor to the male DNA found on evidence at the crime scene." (Emphases omitted.) He therefore contends that the "only plausible basis for the vacatur" of his conviction is his actual innocence, as proven by the exculpatory DNA evidence. Moreover, he argues that the State cannot rely upon a lack of an express finding of actual innocence since the Maui County prosecutors made the motion to dismiss the criminal case with prejudice, which prevented a determination of his innocence.

The State asks this court to affirm the HRS chapter 661B court's grant of summary judgment in its favor. First, the State argues that the HRS chapter 661B court's vacatur of Jardine's conviction was supported neither by an explicit finding of actual innocence, nor any finding equivalent to actual innocence. It contends that the "unambiguous

15

language" and legislative history of HRS § 661B-1 show that the legislature intended to require that a vacatur or reversal order be based on express findings of actual innocence, not just findings that are "consistent with" or "probative of" actual innocence. At minimum, it argues that "an explicit finding legally equivalent to actual innocence" is required.

While Jardine cites to other jurisdictions' statutes and caselaw, the State argues that these comparisons do not help him. It contends that other states' wrongful conviction compensation statutes have language more similar to that in the earlier version of the HRS chapter 661B bill, a standard that the legislature declined to adopt. That proposed bill required that a conviction be vacated "on grounds consistent with innocence." See H.B. 1046, 28th Leg., Reg. Sess. (2015). In contrast, the enacted version of HRS chapter 661B requires that a petitioner's conviction was "reversed or vacated because the petitioner was actually innocent of the crimes . . . , and the court decision so states." HRS § 661B-1(b)(1). Thus, the State argues that the legislative history of HRS chapter 661B supports requiring an explicit finding of actual innocence in the order vacating or reversing a conviction.

The State concludes that Jardine cannot show he is entitled to compensation under HRS § 661B-1(b)(1), and therefore

the HRS chapter 661B court's grant of summary judgment in its favor should be affirmed.

### III. STANDARDS OF REVIEW

#### A. Motion for Summary Judgment

We review a circuit court's grant of summary judgment de novo. Honolulu Auth. for Rapid Transp. ex rel. City & Cnty. of Honolulu v. Victoria Ward, Ltd., 153 Hawai'i 462, 475, 541 P.3d 1225, 1238 (2023). Summary judgment is only appropriate where the relevant pleadings, depositions, interrogatory answers, admissions, and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (internal citations and quotations omitted). "This court may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it." Reyes v. Kuboyama, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) (citations omitted).

#### B. Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009). . . . Our construction of statutes is guided by the following rules:

First, the fundamental starting point for statutory[ ]interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be

17

> obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

First Ins. Co. of Haw. v. A&B Props., 126 Hawai'i 406, 414, 271 P.3d 1165, 1173 (2012) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of Honolulu, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007) (citations omitted)).

## IV. DISCUSSION

The parties dispute whether Jardine can present an actionable claim under HRS § 661B-1(b), and whether he is eligible for compensation because he is "actually innocent." The HRS chapter 661B court granted the State's summary judgment motion, and ruled in its favor on both issues.

We hold that HRS § 661B-1's requirement that a vacatur or reversal of a conviction "so state" that a petitioner is "actually innocent" means that such order must set forth facts supporting the petitioner's actual innocence, but need not use the words "actually innocent." The HRS chapter 661B court erred in granting summary judgment for the State because Jardine sufficiently presented an actionable claim for compensation under HRS § 661B-1(b)(1). Accordingly, we vacate the HRS chapter 661B circuit court's decision and remand the case for a trial according to the procedures outlined in HRS § 661B-2 and HRS § 661B-3.

18

**A. Jardine Has Met the Pleading Requirements of HRS § 661B-1 and the HRS Chapter 661B Court Erred in Granting Summary Judgment for the State on that Issue**

HRS § 661B-1(b) outlines four requirements: the petitioner "shall allege" that (1) they were "convicted of one or more crimes under the laws of the State," (2) they were "subsequently sentenced to a term of imprisonment," (3) they have "served all or any part of the sentence," and (4) that "[t]he judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states." The parties contest the meaning of the fourth element.

The State argues that the order vacating Jardine's conviction did not make "any explicit finding of actual innocence," or an equivalent finding, and therefore, Jardine does not have an actionable claim under HRS § 661B-1(b).

Jardine urges us to adopt a broader understanding of the pleading requirement, such that a petitioner may present an actionable claim so long as a conviction is vacated "on grounds tending to show[] actual innocence." He highlights that the order vacating his conviction satisfies this standard because it was based on new DNA evidence indicative of his actual innocence, and not merely a procedural or technical trial error.

The HRS chapter 661B court held that Jardine could not allege an actionable claim because the order vacating his

19

conviction did not state the words "actually innocent" or an equivalent finding.

Here, the parties and the HRS chapter 661B court conflated the standard necessary to satisfy a threshold pleading requirement and the standard for determining whether a petitioner is eligible for compensation. We interpret "actual innocence" based on its plain meaning. Thus, "actual innocence" simply means that a petitioner did not commit the alleged crime.

To allege an actionable claim under HRS chapter 661B, a petitioner needs to assert that their conviction was vacated based on facts that support factual innocence, meaning that they did not commit the crime. If a petitioner only alleges that their conviction was vacated on purely technical or procedural grounds that do not affect their factual innocence, then their claim will fail under the statute. At trial, a petitioner will need to prove their factual innocence by a preponderance of the evidence under HRS § 661B-3.

In this case, Jardine sufficiently alleged a claim under HRS § 661B-1 because he asserted his conviction was vacated based on exonerating DNA evidence that tended to show that he did not commit the alleged crime. However, because there is still a genuine issue of material fact as to whether Jardine is "actually innocent," that issue should be remanded for trial.

1. **HRS § 661B-1 does not require that an order vacating or reversing a conviction use the exact words "actually innocent" for a petitioner to present an actionable claim**

Under HRS § 661B-1(b)(1), to present an actionable claim a petitioner must allege that "[t]he judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states." HRS § 661B-1(b)(1) (emphases added). The State contends that these phrases, read together, indicate that the order vacating or reversing a conviction must include the words "actually innocent," or an equivalent finding. Jardine argues that requiring the use of such "magic words" would lead to absurd results.

We agree with the ICA's reasoning in Guity v. State, 153 Hawaiʻi 368, 376 538 P.3d 780, 788 (App. 2023) that the words "actual innocence" need not appear in the order reversing or vacating a petitioner's conviction for a petitioner to survive summary judgment as to their eligibility for relief under HRS § 661B-1(b)(1). See Amantiad v. Odum, 90 Hawaiʻi 152, 161, 977 P.2d 160, 169 (1999) ("[T]his court is bound to construe statutes so as to avoid absurd results. . . . A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable, impracticable,

inconsistent, contradictory, and illogical.") (internal quotations, brackets, citations, and citations omitted).

In Guity, the ICA concluded that the court decision reversing or vacating a conviction need not contain the exact words "actually innocent" for a petitioner to present an actionable claim under HRS § 661B-1(b)(1).  153 Hawai'i at 376–77, 538 P.3d at 788-89.  It held:

> The State argues that the court decision reversing or vacating a conviction must contain the precise words, "actually innocent," because HRS § 661B-1(b)(1) requires that "the court decision so state[]."  Were that the case, any court could subvert an actually innocent person's standing to make a claim for redress by simply omitting the words "actually innocent" from its decision.  That result would be absurd.

Id. at 376, 538 P.3d at 788 (citing Barker v. Young, 153 Hawai'i 144, 149 n.8, 528 P.3d 217, 222 n.8 (2023) ("[I]f a literal construction of statutory language would produce an absurd result, we presume that result was not intended and construe the statute in accord with its underlying legislative intent." (internal quotation marks and citation omitted)).

It would be especially unreasonable to deny petitioners like Jardine any redress when their convictions were vacated or reversed prior to the enactment of HRS chapter 661B. The statute's enactment in 2016 established "actual innocence" as a novel legal standard in Hawai'i's jurisprudence.  Under the State's interpretation of HRS chapter 661B, which requires the words "actually innocent" or an equivalent finding to be present

22

in a vacatur order, a petitioner such as Jardine would rarely, if ever, be eligible for compensation.  But that reasoning conflicts with the fact that the legislature specifically included language in HRS chapter 661B that would allow such individuals to submit petitions under the statute:

> Every claim arising under this chapter shall forever be barred unless the action is commenced by filing a petition with the circuit court within two years after the conviction that is the subject of the petition is either reversed or vacated, or the petitioner is pardoned for that conviction; provided that:
>
> > (1) If the claim is based on a conviction reversed or vacated or a pardon granted prior to June 29, 2016, the claim shall be commenced by filing a petition with the circuit court no later than July 1, 2018, or be forever barred.

HRS § 661B-4 (2016) (emphasis added).

Further, the legislative history of HRS chapter 661B suggests that the legislature did not intend to require the exact words "actually innocent" to be written in a vacatur order for a petitioner to bring a claim under the statute.  The Committee on Conference noted that "[i]nnocent persons who have been wrongfully convicted of crimes and subsequently imprisoned have been uniquely victimized, have distinct challenges re-entering society, and have difficulty achieving legal redress due to a variety of substantive and technical challenges in the law."  Conf. Comm. Rep. No. 146-16 on H.B. No. 1046, in 2016 House Journal, at 1410, 2016 Senate Journal, at 835.  Accordingly, the Committee found that innocent individuals

"deserve a process of redress over and above the existing tort remedies to seek compensation for damages from the jurisdiction that wrongly convicted and imprisoned them." Id. Requiring that the vacatur order include the precise words "actual innocence" would be imposing the type of "technical obstacle" that the legislature was trying to eliminate.

We therefore hold that the language "and the court decision so states," means that the order must make clear that the basis for the reversal or vacatur is factual innocence, or innocence of the crime, rather than a procedural technicality. But that language does not specifically require the words "actually innocent" to be included in the vacatur order.

**2. Jardine has sufficiently alleged an actionable claim under HRS § 661B-1 because the order vacating his conviction stated a basis for his factual innocence**

Here, the HRS chapter 661B court erred in concluding that because the underlying vacatur order did not make a finding "equivalent to a finding of actual innocence," Jardine failed to allege an actionable claim under HRS § 661B-1(b)(1). The HRPP Rule 40 court that vacated Jardine's conviction concluded:

> 3. Newly discovered DNA evidence, obtained pursuant to this Court's October 14, 2008 Order Compelling Post-Conviction DNA Testing of Evidence, conclusively excludes Mr. Jardine as the contributor of the male DNA found on evidence (the tablecloth) recovered from the crime scene. This evidence is sufficient to merit a new trial under the four-part test established in McNulty and Caraballo.
>
> . . . .

24

7. The fourth McNulty/Caraballo element, that the evidence be of such a nature as would reasonably probably change the result of a later trial, is also satisfied as the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict.

The HRS chapter 661B court erroneously reasoned that "[t]he plain language of HRS § 661B-l(b)(1), and its legislative history, compel this reading of the statute -- requiring an explicit finding of actual innocence in the criminal court's order vacating his convictions."  Because the vacatur order in Jardine's case stated only that "the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict," the HRS chapter 661B court determined that this language "fail[ed] to meet the prerequisites for an actionable claim in HRS § 661B-1(b)(1)." Accordingly, the HRS chapter 661B court concluded that Jardine failed to allege an actionable claim under HRS § 661B-l(b)(1).

The HRS chapter 661B court's reasoning is unpersuasive for several reasons.  First, it is unlikely that an HRPP Rule 40 court will use the words "actually innocent," because that is not the legal standard under which it vacates a conviction or orders a new trial.  Moreover, contrary to the State's argument that the federal habeas definition of "actual innocence" applies to HRS chapter 661B, nothing in the statute's text or legislative history indicates that our legislature intended for that definition to be used.  See Schlup v. Delo, 513 U.S. 298,

25

327 (1995) (holding that a petitioner for federal habeas relief must "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" to prove that they are "actually innocent"). Finally, a finding "equivalent" to actual innocence would be nearly impossible to satisfy, particularly for defendants whose convictions were vacated before HRS chapter 661B was enacted. Instead, a petitioner can allege an actionable claim when their conviction was reversed or vacated on the basis of facts that support factual innocence.

In Jardine's case, the HRPP Rule 40 court reviewed the new DNA evidence under the standard for granting a new trial based on newly discovered evidence, which requires that the evidence be "material to the issues and not cumulative or offered solely for purposes of impeachment[,]" and "the evidence is of such a nature as would probably change the result of a later trial." McNulty, 60 Haw. at 268, 588 P.2d at 445. The HRPP Rule 40 court found that the "new potentially exculpatory DNA evidence goes to the identity" of the perpetrator and "the potentially exculpatory nature of the new DNA evidence has the reasonable probability of changing the jury's verdict." It focused on whether or not Jardine provided evidence that would probably change the result of a trial, i.e. result in an acquittal, under HRPP Rule 40(a)(1)(iv) (2018) ("that there is

26

newly discovered evidence"), but not whether he was "actually innocent." The HRPP Rule 40 court's decision is therefore sufficient for Jardine to allege an actionable claim under HRS chapter 661B.

Importantly, the State does not argue that the HRPP Rule 40 court's vacatur order is based on anything other than findings and conclusions related to Jardine's innocence. It does not contend that the vacatur occurred because of a purely procedural defect. Instead, the State argues:

> In other words, while the Vacatur Order established that the new DNA evidence created enough reasonable doubt that it was likely a jury in a future trial would acquit, it did not establish that Petitioner was actually innocent. And this makes sense in light of the exact nature of the new DNA evidence in this case. The Court in the Vacatur Order found that "[t]he results of the DNA analysis and testing by Orchid Cellmark conclusively excluded Mr. Jardine as the contributor of the DNA found in the bodily fluid that was located on the green and white checked tablecloth taken by the police as evidence from the crime scene." ROA Dkt. 105 at PDF 33, FOF ¶10. Thus, while Petitioner was excluded as the contributor to the DNA on this one piece of evidence, he "was not 'conclusively excluded' as the perpetrator of the sexual assaults against [the complainant]."

But the State did not show there was "an absence of evidence to support the nonmoving party's [here, Jardine's,] case." See Ralston v. Yim, 129 Hawai'i 46, 57, 292 P.3d 1276, 1287 (2013) (quotation marks and citation omitted). The vacatur order clearly focuses on evidence that would support Jardine's substantive claim of actual innocence. Notably, Jardine's conviction was vacated before this standard existed. The legislature knew that petitioners like Jardine, whose

27

convictions were vacated before HRS chapter 661B was enacted, would bring claims under the statute.  Indeed, it specifically permitted them to do so.  See HRS § 661B-4(1) (2016) (allowing claims under the statute for convictions that were "reversed or vacated or a pardon granted prior to June 29, 2016" on the condition that such claims "shall be commenced by filing a petition with the circuit court no later than July 1, 2018, or be forever barred").  The legislature therefore knew that the words "actually innocent," or even an equivalent finding, would not be present in such petitioners' vacatur orders.  In sum, HRS chapter 661B is meant to allow petitioners like Jardine to bring a claim and have a trial on their petition when the order vacating their conviction is based on findings that pertain to the petitioner's factual innocence.

We conclude that Jardine has sufficiently alleged that he is eligible for relief under HRS § 661B-1(b)(1), such that he is entitled to proceed to the merits of his claim under HRS § 661B-3.  The HRS chapter 661B court therefore erred in granting summary judgment to the State on this issue.

3.  **HRS § 661B-1 requires that a petitioner allege that their conviction was vacated for substantive reasons related to factual innocence**

When enacting HRS chapter 661B, the legislature had to decide who would be eligible for compensation, and who would not.  The House Judiciary Committee noted that

28

> [w]rongful convictions and the subsequent incarcerations may be the result of many factors, including eyewitness misidentification, false confessions, improper forensic science, and government misconduct. The conundrum confronting any compensation scheme is to identify deserving individuals who are innocent of crimes from those who are not.

H. Stand. Rep. No. 411-16, in 2016 House Journal, at 903.

While the legislature had the opportunity to compensate any individual whose conviction was reversed or vacated, it chose not to do so. Instead, the legislature decided that petitioners under HRS chapter 661B must be screened via a two-stage process. First, under HRS § 661B-1 a petitioner must allege an actionable claim. Second, under HRS § 661B-3, a petitioner must prove that they are "actually innocent." Thus, while the legislature did not specifically describe which kinds of vacaturs will constitute "actual innocence," it does indicate that petitioners who can state an actionable claim might be able to do so because there are issues related to "eyewitness misidentification, false confessions, improper forensic science, and government misconduct." Id. We agree with Jardine that under HRS § 661B-1, a petitioner must show that their conviction was vacated based on evidence of innocence, rather than a technical or procedural issue. See Guity, 153 Hawai'i at 376-77, 538 P.3d at 788-89 (holding that an order vacating a conviction on the basis of legal impossibility met the pleading requirements of HRS § 661B-1(b)(1) that a

29

conviction be reversed or vacated "because the petitioner was actually innocent," and that court decision "so state[d]."). As discussed further below, the vacatur order must provide a basis for the "actual innocence" that will be litigated at trial, which in the context of HRS chapter 661B means factual innocence.

We therefore conclude that it is sufficient for a petitioner to allege that their conviction was vacated or reversed on the basis of facts that support factual innocence. If this threshold requirement is met, and the State disputes their eligibility for compensation, a petitioner is then subject to a trial to prove their actual innocence by a preponderance of the evidence.

**B.  At Trial, a Petitioner Must Prove That They Are Actually Innocent, Which Means They Are Factually Innocent of the Alleged Crime**

The heart of HRS chapter 661B centers on a trial, in which a petitioner must prove by a preponderance of the evidence that they are "actually innocent." Once a conviction is vacated, a presumption of innocence is restored to the defendant for purposes of a criminal prosecution. However, in a HRS chapter 661B civil claim, the petitioner then has the burden to prove by a preponderance of the evidence that they are "actually innocent of the crimes at issue." The State, for its part, has

30

the burden to prove by a preponderance of the evidence any of its affirmative defenses.  See HRS § 661B-3.

As the Supreme Court of Oklahoma explained,

> [s]ignificantly, the concept of actual innocence is not a common law legal standard in the same sense as guilt beyond a reasonable doubt.  The term actual innocence is a general expression of Legislative intent to limit tort claim relief to cases in which the defendant was exonerated, as opposed to cases in which a conviction is set aside from the suppression of a confession or the exclusion of other evidence.

Courtney v. State, 307 P.3d 337, 340 (Okla. 2013).

Our court has not specifically defined "actual innocence."  This court has stated that "the fundamental starting point for statutory interpretation is the language of the statute itself. . . . [W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning."  Unite Here! Loc. 5 v. City & Cnty. of Honolulu, 123 Hawai'i 150, 170, 231 P.3d 423, 443 (2010) (citation omitted).  "In interpreting a statute, we give the operative words their common meaning, unless there is something in the statute requiring a different interpretation."  Ross v. Stouffer Hotel Co., 76 Hawai'i 454, 461, 879 P.2d 1037, 1044 (1994) (citations omitted).

The State asks us to adopt the Colorado Court of Appeals' explanation that "actual innocence refers to factual innocence as distinguished from legal innocence, the legal presumption of innocence afforded to people who are acquitted or

31

not yet convicted of a crime." Coyle, 492 P.3d at 372. The State defines actual innocence as "an affirmative finding tha[t] an individual is factually innocent, as opposed to merely the absence of guilt."

We agree that a petitioner must establish they are factually innocent by making an affirmative showing that they did not commit the crime at issue. When determining whether a petitioner is eligible for compensation under HRS chapter 661B, a civil court cannot rely solely on the presumption of innocence that has been restored to a petitioner after their conviction has been vacated or reversed. Instead, the HRS chapter 661B civil court must evaluate whether a petitioner has shown by a preponderance of the evidence that they did not commit the alleged crime. We therefore hold that in the context of HRS chapter 661B, "actual innocence" means that a petitioner did not commit the crime.

While our legislature chose not to adopt a specific definition of "actual innocence," the legislative history of HRS chapter 661B accords with an interpretation of "actual innocence" meaning factual innocence. See Frank v. Haw. Planing Mill Found., 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) ("[T]his court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." (internal

32

quotation marks and citations omitted)).  HRS chapter 661B's language and legislative history clearly indicate the legislature's desire to narrow the scope of relief under the statute to "balance[] the interests of an allegedly wrongfully imprisoned petitioner with the State's limited resources." Conf. Comm. Rep. No. 146-16 on H.B. No. 1046, in 2016 House Journal, at 1410, 2016 Senate Journal, at 835.

First proposed in 2015, the initial language of the bill that would become HRS chapter 661B required a petitioner to show that their conviction was vacated or reversed on "grounds consistent with innocence and supported by findings that clearly state such consistency."[5]  H.B. 1046. 28th Leg. Reg. Sess. (2015) (emphasis added); see also H.B. 148, H.D. 2, S.D. 2, 28th Leg., Reg. Sess. (2015).  In contrast, HRS chapter 661B's final language requires that a petitioner show they are "actually innocent."  The legislature recognized that the "conundrum confronting any compensation scheme is to identify deserving individuals who are innocent of crimes from those who are not." H. Stand. Comm. Rep. No. 411-16, in 2016 House Journal, at 903.

---

[5]     The legislature first considered H.B. 1046 in 2015, but the bill did not receive a hearing during that session.  See H.B. 1046, 28th Leg., Reg. Sess. (2015).  That same year, a nearly identical bill, House Bill 148, passed readings in both the House and the Senate but was ultimately deferred in conference committee.  H.B. 148, H.D. 2, S.D. 2, 28th Leg., Reg. Sess. (2015).

A review of other states' statutes concerning compensation for wrongful conviction turns up a number of definitions of "actual innocence," all of which focus on elements of factual innocence.[6]  See, e.g., Colo. Rev. Stat. Ann. § 13-65-101(1)(a) (West 2018) (defining actual innocence under the wrongful conviction compensation statute to be when a "conviction was the result of a miscarriage of justice" or petitioner "presented reliable evidence that he or she was factually innocent of any participation in the crime at issue"); La. Stat. Ann. § 15:572.8(B) (West 2021) (defining factual innocence to mean that "the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction"); Vt. Stat. Ann. tit. 13, § 5574(a)(3) (West 2017) (defining actual innocence to mean that a claimant must prove that they "did not engage in any illegal conduct alleged in the charging documents").

---

[6]     Such review was conducted by a special committee on redress formed by the Hawai'i Chapter of the American Judicature Society in the 2015 legislative interim (AJS Special Committee).  American Judicature Society, Final Report of the American Judicature Society Committee on Redress for Unlawful Imprisonment Appendix F (2015), https://americanjudicaturesociety.org/wp-content/uploads/2022/08/2015-AJS-Redress-Final-Report.pdf [https://perma.cc/7FNR-VLJD].  The AJS Special Committee was convened to "work on [statutory] language with various stakeholders," and "suggestions of the [AJS Special Committee] were incorporated into H.B. No. 1046, H.D. 1."  H. Stand. Comm. Rep. No. 411-16, in 2016 House Journal, at 903.

Because there is no other indication in HRS chapter 661B as to what "actual innocence" means, an interpretation of the phrase as factual innocence accords with the plain meaning, the legislative history, and the structure of the statute, which all focus on "identify[ing] deserving individuals who are innocent of crimes from those who are not." H. Stand. Comm. Rep. No. 411-16, in 2016 House Journal, at 903.

**1.  The HRS chapter 661B court erred in granting the State's motion for summary judgment because there are genuine issues of material fact regarding Jardine's actual innocence**

We have established the following framework for summary judgment:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law.  This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law.  Only when the moving party satisfies its initial burden of production does the burden shift to the non[-]moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion.  This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Ralston, 129 Hawai'i at 56-57, 292 P.3d at 1286-87 (quotation and citation omitted).

"[A] summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non[-]movant will be unable to carry his or her burden of proof at trial." Id. at 60, 292 P.3d at 1290.

In reviewing Jardine and the State's cross-motions for summary judgment, the court concluded:

> [E]ven assuming an actionable claim, the evidence presented by Petitioner, taken in the light most favorable to the State, fails to show that there is no genuine issue of material fact as to Petitioner's actual innocence of the crimes for which he had been convicted.
>
> 8. Therefore, Petitioner failed to establish that he is entitled to compensation as a matter of law, under HRS § 661B-3.

The HRS chapter 661B court erred in concluding that the State had shown there was no genuine issue of material fact as to whether Jardine was actually innocent and that he therefore "failed to establish that he is entitled to compensation as a matter of law, under HRS § 661B-3." It appears that the HRS chapter 661B court incorrectly assessed the evidence before it. The court stated that "the evidence presented by Petitioner, taken in the light most favorable to the State, fails to show that there is no genuine issue of material fact as to Petitioner's actual innocence of the crimes

36

for which he had been convicted." But this standard only applies when reviewing Jardine's summary judgment motion. The court should have reviewed the evidence in the light most favorable to Jardine when reviewing the State's summary judgment motion. See Ralston, 129 Hawai'i at 56, 292 P.3d at 1286 ("The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.") (quotation and citation omitted).

Reviewing the evidence in the light most favorable to Jardine, we conclude that there are genuine issues of material fact as to whether Jardine is actually innocent. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008) ("A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, [the appellate court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.") (quoting Price v. AIG Haw. Ins. Co., 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005)).

In his opposition to the State's motion for summary judgment, Jardine presented evidence in support of his claim that he was factually innocent of the crime. Jardine submitted a declaration in which he stated that "[n]o physical evidence ever connected [him] to the Incident or to any of the alleged crimes for which he was charged" and on the night of the crime, he was "with friends and family . . . all of whom confirmed Mr. Jardine was with them during the attack." He also attached to his own motion for summary judgment a copy of the DNA lab results, and transcripts of his testimony at trial that he did not commit the crime.

To its motion for summary judgment, the State attached the HRPP Rule 40 court's findings of fact and conclusions of law, the Maui Deputy Prosecuting Attorney's July 2011 motion to dismiss the case with prejudice, and Jardine's response to the State's first request for answers to interrogatories in the HRS chapter 661B proceedings. But the State did not address the exculpatory DNA evidence head on. Instead, the State relied on the fact that the HRPP Rule 40 court vacating Jardine's conviction concluded the DNA evidence was only "potentially exculpatory," and therefore contended that Jardine could not show that he was actually innocent of the alleged crime. However, the State's reliance on the HRPP Rule 40 court's vacatur order is insufficient to show that Jardine would be

38

unable to meet his burden of proof at trial, given that there was evidence in Jardine's opposition to the State's motion for summary judgment to suggest that he did not commit the crime.

Much of the dispute centers on the new DNA evidence obtained from the green and white checked tablecloth that was on the "papa-san" chair, a critical piece of evidence from the crime scene. At Jardine's criminal trial, there was an "absence of DNA" evidence that conclusively linked Jardine to the crime scene. The 2011 DNA analysis "conclusively excluded" Jardine as the contributor of the DNA found on the tablecloth. However, while Jardine's DNA was not found on that tablecloth, that evidence alone does not conclusively establish his actual innocence, since the sexual assault occurred in locations other than that chair. Those issues must be remanded for a trial, where both Jardine and the State can present evidence and the HRS chapter 661B court may adjudicate Jardine's "actual innocence" under the appropriate evidentiary burdens of proof.

In sum, evidence in the record shows that there are genuine issues of material fact regarding Jardine's actual innocence. Accordingly, the HRS chapter 661B court did not err in denying Jardine's motion for summary judgment.[7] However, it

---

[7] The dissent suggests that we should grant summary judgment to Jardine because the State did not present any evidentiary material in opposition to Jardine's motion. We respectfully disagree.

(. . . continued)

was error for the HRS chapter 661B court to grant summary judgment to the State because Jardine provided evidence creating a genuine issue of material fact and the State did not demonstrate Jardine would be unable to carry his burden of proof at trial.

---

(continued . . .)

Although Jardine asserted that he was innocent in a declaration in support of his motion, that portion of his declaration did not form the basis of his argument as to his actual innocence. Rather, he sought summary judgment based on the HRPP Rule 40 court's finding that the DNA testing of the tablecloth required a new trial. Specifically, Jardine contended that the Rule 40 court's finding supported the application of res judicata or collateral estoppel to establish his actual innocence in the 661B action.

The State's response to Jardine's motion was not a sidetrack, but a direct counter to his argument "that both collateral estoppel and res judicata apply to findings entered by the Circuit Court in the Criminal Case." (Emphases omitted) The State correctly recognized that Jardine was "argu[ing] that he has already proven that he is 'actually innocent' of crimes for which he had been convicted, and is entitled to compensation in this action, as a matter of law, relying on the doctrines of res judicata and collateral estoppel." In response to that argument, the State pointed out that "a [changed] verdict from guilty to not guilty does not equal actual innocence."

Consistent with this reading of the motion, Jardine's own proposed findings of fact and conclusions of law submitted to the 661B court asked the court to find that the Rule 40 court's order provided the basis for applying res judicata, collateral estoppel and/or judicial estoppel to establish his actual innocence.

Because the State responded directly to the argument Jardine put forth in his motion, and because the DNA evidence did not conclusively exclude Jardine as the perpetrator, the 661B court was correct in finding that there was still a genuine issue of material fact as to Jardine's actual innocence. Thus, summary judgment in favor of Jardine was not appropriate. See Adam N. Steinman & Mary Kay Kane, 108 Fed. Prac. & Proc. Civ. § 2739 (4th ed. 2024) ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, even if no opposing evidentiary matter is presented." (Emphasis, internal quotation marks, and citation omitted.))

2. **The case is remanded for a trial under HRS § 661B-3**

The legislature specifically designed HRS chapter 661B to create a process that would adjudicate whether individuals who were wrongfully convicted were entitled to compensation:

> Your Committee finds that compensation for wrongful imprisonment generates many viewpoints about the State's responsibility in these circumstances. Wrongful convictions and the subsequent incarcerations may be the result of many factors, including eyewitness misidentification, false confessions, improper forensic science, and government misconduct. <u>The conundrum confronting any compensation scheme is to identify deserving individuals who are innocent of crimes from those who are not.</u>

H. Stand. Comm. Rep. No. 411-16, in 2016 House Journal, at 903 (emphasis added).

HRS § 661B-2(d) provides that "[a]ny action against the State under this chapter shall be tried by the court without a jury; provided that the court, with the consent of all the parties, may order a trial with a jury whose verdict shall have the same effect as if trial by jury had been a matter of right."

HRS § 661B-3(a) outlines the trial procedures that will "identify deserving individuals" who are entitled to compensation. The petitioner has the burden to prove by a preponderance of the evidence:

> (1) That the petitioner is eligible to seek compensation in accordance with the requirements set forth in section 661B-1;
>
> (2) That the petitioner was convicted in a court of the State and subsequently imprisoned for one or more crimes, but the petitioner was actually innocent of the crimes at issue; and

41

(3)   That the petitioner served time in prison for the crime or crimes, including time served prior to conviction, if any.

While HRS chapter 661B does not indicate what evidence should be admitted in trial to establish or negate actual innocence, courts from other jurisdictions have permitted both the State and petitioners to submit evidence from prior proceedings, as well as new evidence or witness testimony.  See, e.g., In re Williams, 984 So.2d 789, 792 (La. Ct. App. 2008) (permitting a court reviewing a wrongful conviction compensation claim to "consider any relevant evidence regardless of whether it was admissible in, or excluded from, the criminal trial in which the applicant was convicted").  In a New York case, Ivey v. State, the civil court reviewing a claim under the state's "Unjust Conviction and Imprisonment Act" permitted a petitioner who had the burden of proving his innocence by "clear and convincing evidence" to present his own alibi testimony, alibi witness testimony, and "other culprit" testimony of a new witness.  606 N.E.2d 1360 (N.Y. 1992).  In Gonzales v. Cal. Victim Compensation Bd., the State introduced enhanced audio-recordings of petitioner's post-arrest interview that was previously inaudible and not in the trial record.  316 Cal. Rptr. 3d 757, 774 (Cal. Ct. App. 2023).  The petitioner also testified and presented an affidavit from a witness that was not called to testify at trial.  Id.  These cases illustrate that a

HRS chapter 661B trial will likely involve existing record evidence, as well as potential new evidence in the form of written documents, DNA evidence, or witness testimony. These trials will proceed under the Hawai'i Rules of Civil Procedure and the court will admit relevant evidence as necessary to make determinations as to a petitioner's eligibility for compensation under the statute.

Because the HRS chapter 661B court erred in granting summary judgment for the State, a trial will permit both parties to further adjudicate whether Jardine is actually innocent of the alleged crimes.

## C. Jardine's Res Judicata and Collateral Estoppel Arguments are Without Merit

Finally, Jardine argues that res judicata (claim preclusion) and collateral estoppel (issue preclusion) apply here. These arguments are without merit.

Claim preclusion applies when: "(1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question." Bremer v. Weeks, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004).

Here, claim preclusion does not apply because both the claim and the cause of action are different. Jardine's HRPP

Rule 40 petition was adjudicated in criminal court using the McNulty standard that asks whether new evidence would probably have changed the outcome of the trial. See 60 Haw. at 267-68, 588 P.2d at 445 (outlining a four-element test for a new trial based on newly discovered evidence). Now, in his HRS chapter 661B proceeding, Jardine must show by a preponderance of the evidence in civil court that he was actually innocent of the crime. These are two different standards that break the chain of requirements needed for claim preclusion.

Issue preclusion applies when: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication." Bremer, 104 Hawai'i at 54, 85 P.3d at 161 (citing Dorrance v. Lee, 90 Hawai'i 143, 149, 976 P.2d 904, 911 (1999)).

Issue preclusion cannot apply here because the issue in the order vacating Jardine's conviction was whether the new evidence was "of such a nature as would reasonably probably change the result of the later trial." Actual innocence, at issue in a HRS chapter 661B petition, is a separate issue that requires Jardine to show that he did not commit the crime.

44

Under Jardine's preclusion theories, no HRS chapter 661B claim would ever get to trial — and it hardly seems that the legislature intended for that to be the case. The legislature structured HRS chapter 661B to have both a pleading standard (HRS § 661B-1(b)) and a later evidentiary burden (HRS § 661B-3). If a petitioner could use preclusion to show their actual innocence, the evidentiary standard the legislature created would be essentially moot. This difference in standards of proof indicates that the legislature did not intend for the underlying vacatur order to be used for preclusion in the later HRS chapter 661B claim.

Between the HRPP Rule 40 petition and the HRS chapter 661B petition, there are different claims, different courts, and different issues. Accordingly, we affirm the HRS chapter 661B court's decision that neither res judicata nor collateral estoppel apply.

### V. CONCLUSION

In sum, we vacate the HRS chapter 661B court's grant of summary judgment for the State because it incorrectly concluded that Jardine did not allege an actionable claim under the statute, and also incorrectly determined that there was no genuine issue of material fact as to whether he was actually innocent of the alleged crimes.

For the foregoing reasons, we (1) affirm the circuit court's July 25, 2023 Order in part, specifically its denial of Jardine's May 22, 2023 motion for summary judgment; (2) vacate the circuit court's July 21, 2023 Order in part, specifically its granting of the State's May 22, 2023 Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment; (3) vacate the circuit court's July 28, 2023 Final Judgment in favor of the State and against Jardine; and (4) remand the case for further proceedings consistent with this opinion.

<table>
<tr><td>F. Matson Kelley<br>Joseph L. Wildman<br>(Alexander L. Wilkins,<br>Anthony P. Takitani,<br>Gilbert S.C. Keith-Agaran, and<br>David M. Jorgensen,<br>on the briefs)<br>for petitioner-appellant<br><br>Ewan C. Rayner<br>for respondent-appellee</td><td>/s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins<br><br>/s/ Lisa M. Ginoza</td><td></td></tr>
</table>